IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CIVIL ACTION NO. 18-CV-03025-KLM

JOHN STANDLEY SNORSKY,
    PLAINTIFF,

V.

RICH RAEMISCH, ET. AL.,
    DEFENDANTS.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
07/29/2021
JEFFREY P. COLWELL, CLERK

PLAINTIFFS RESPONSE TO DEFENDANTS MOTION TO DISMISS PLAINTIFFS AMENDED COMPLAINT

PLAINTIFF, JOHN STANDLEY SNORSKY, IS A PRO-SE PRISONER IN THE CUSTODY OF COLORADOS DEP'T OF CORRECTIONS ("CDOC") AT BUENA VISTA CORRECTIONAL FACILITY ("BVCF") SUBMITS THIS RESPONSE TO DEFENDANTS MOTION TO DISMISS PLAINTIFFS AMENDED COMPLAINT.

## ARGUMENT AGAINST MOTION TO DISMISS

DEFENDANTS, THROUGH THEIR COUNSEL, CONTINUE TO MISREPRESENT THE FACTS, MINIMIZE THIER ROLES THAT CONTRIBUTED TO PLAINTIFF BEING SUBJECTED TO A MURDER ATTEMPT THEY COULD HAVE EASILY PREVENTED HAD ANY OF THEM TOOK REASONABLE MEASURES TO ENSURE HIS SAFETY, AND TRY TO AVOID RESPONSIBILITY OFFICERS CLAIMING THEY HAD NO POWER TO PROTECT THE PLAINTIFF, WHILE HIGHER RANKING OFFICIALS TRY TO CLAIM KNEW NOTHING OF PLAINTIFFS SAFETY ISSUES SO THAT IN THE END THE DEFENDANTS CAN ALLEGE NO PRISON STAFF IS LIABLE.

IN DEFENDANTS MOTION TO DISMISS PLAINTIFFS (ORIGINAL) COMPLAINT AND ANSWER WOULD LIKE THIS COURT TO BELIEVE THE PLAINTIFFS INJURIES, "IF ANY", WERE DUE TO HIS OWN ACTIONS OR OMISSIONS AND THAT THE OFFENDERS WHO ATTEMPTED TO MURDER THE PLAINTIFF WERE SOMEHOW OUTSIDE THEIR POWER AND HAD NO AUTHORITY OVER, IN WHICH WOULD HAVE GIVEN THEM THE ABILITY TO PREVENT THE MURDER ATTEMPT. HOWEVER WHEN CONSIDERING THESE DEFENDANTS ARE COOL PRISON STAFF, MANY WORKING AT COLORADO STATE PENITENTIARY ("CSP") WHICH IS COLORADOS MOST DANGEROUS PRISON, AND THAT THE PLAINTIFF AND HIS 3 ATTACKERS WERE PRISONERS HELD AT CSP IN THEIR CUSTODY, SUCH DEFENSES ARE NOT ONLY FALSE, BUT ALSO SHOWS THE DEFENDANTS WILL SAY ANYTHING TO HAVE AS MANY OF THEIR FELLOW COOL PRISON STAFF DISMISSED FROM THIS CASE, AT THIS EARLY STAGE, SO THAT THESE DEFENDANTS ESCAPE DISCOVERY AND JURY TRIAL.

"CREDIBILITY DETERMINATIONS, THE WEIGHING OF THE EVIDENCE, AND THE DRAWING OF LEGITIMATE INFERENCES FROM THE FACTS ARE JURY FUNCTIONS, NOT THOSE OF A JUDGE," GALLOWAY U.U.S., 319 U.S. 372, 396, 63 S.CT. 1077 (1943); ACCRD. ANDERSON V. LIBERTY LOBBY, INC., 477 U.S. 242, 255, 106 S.CT. 2505 (1986). IN DECIDING A MOTION TO DISMISS, THE COURT IS REQUIRED TO "ACCEPT THE ALLEGATIONS OF THE COMPLAINT AS TRUE AND CONSTRUE THOSE ALLEGATIONS, AND ANY REASONABLE INFERENCES THAT MIGHT BE DRAWN FROM THEM, IN THE LIGHT MOST FAVORABLE TO THE PLAINTIFF." KAY V. BEMIS, 500 F.3d 1214, 1217 (10TH CIR. 2007)(QUOTING GAINES V. STENSENG, 292 F.3d 1222, 1224 (10TH CIR. 2002). THE COURT IS NOT TO RESOLVE FACTUAL DISPUTES AT THIS STAGE OF THE LAWSUIT,..." THE COMPLAINT MUST GIVE THE COURT REASON TO BELIEVE THAT THIS PLAINTIFF HAS A REASONABLE LIKELIHOOD OF MUSTERING FACTUAL SUPPORT FOR THESE CLAIMS", RIDGE AT RED LAWK. LLC. V. SCHNEIDER, 493 F.3d 1174, 1177 (10TH CIR. 2007). ANY DISMISSAL AT THIS POINT IN THE CASE WOULD PREJUDICE THE PLAINTIFF OF A JURY TRIAL WHERE DEFENDANTS CAN ATTEMPT

TO EXPLAIN AWAY THE DOCUMENT PROOF ALREADY SUBMITTED TO THIS COURT AND THE DOZENS OF OTHER DOCUMENTS OF PROOF YET TO BE SUBMITTED TO THIS COURT BY THE PLAINTIFF, ALONG WITH COMPLIED PHONE CONVERSATIONS PLAINTIFFS LOVED ONES COLLECTED FROM SEVERAL OF THESE DEFENDANTS AND OTHER EVIDENCE COLLECT THROUGH DISCOVERY THE DEFENDANTS WILL BE HARD PRESSED TO SWAY A JURY THEY ARE NOT GUILTY OF THE PREPONDERENCE OF THE EVIDENCE.

PLAINTIFF WAS UNDER THE BELIEF WHEN FILING HIS ORIGINAL COMPLAINT IN THIS COURT THAT A COMPLAINT MUST BE "A SHORT AND PLAIN STATEMENT OF THE CLAIM SHOWING THAT THE PLEADER IS ENTITLED TO RELIEF." RULE 8(a). F. R. C. P. . THEREFORE, THE PLAINTIFF, WITHOUT ACCESS TO A LAW LIBRARY, ATTEMPTED TO TO DO JUST THAT. THOUGH THE DEFENDANTS SIEZE ON THE PLAINTIFF'S ORIGINAL COMPLAINT SHORT AND PLAIN STATEMENT OF ALLEGATIONS AGAINST EACH DEFENDANT AS TOO BROAD, TOO GENERAL. ONCE PLAINTIFF FILED HIS AMENDED COMPLAINT, WHICH INCLUDES MORE EXACT DETAILS AND SPECIFICS OF THE ALLEGATIONS AGAINST DEFENDANT THE ARE NOW ATTEMPTING TO ALLEGE PLAINTIFFS AMENDED COMPLAINT IS ALLEGING "NEW" ALLEGATIONS THAT DO NOT RELATE BACK TO THE ORIGINAL COMPLAINT. THE SUPREME COURT SAID, "A COURT MUST, "DRAW ON ITS JUDICIAL EXPIRIENCE AND COMMON SENSE " IN DETERMINING WHETHER ALLEGATIONS ARE PLAUSIBLE. COMPLAINTS, "DO NOT REQUIRE HEIGHTENED FACT PLEADING OF SPECIFICS, BUT ONLY ENOUGH FACTS TO STATE A CLAIM TO RELIEF IS PLAUSIBLE ON ITS FACE." TWOMBLY, 550 U.S. AT 570. AND UNDER BELL ATLANTIC, EACH ELEMENT OF THE MUST MEET THE PLAUSIBILITY STANDARD; "STATING ... A CLAIM REQUIRES A COMPLAINT WITH ENOUGH FACTUAL MATTER (TAKEN AS TRUE) TO SUGGEST" THE REQUIRED ELEMENTS. THIS "DOES NOT IMPOSE A PROBABILITY REQUIREMENT AT THE PLEADING STAGE", BUT INSTEAD," SIMPLY CALLS FOR ENOUGH FACTS TO RAISE A REASONABLE EXPECTATION THAT DISCOVERY WILL REVEAL EVIDENCE OF THE NECESSARY ELEMENTS."

THE DEFENDANTS , THROUGH THEIR COUNSEL, WOULD LIKE TO INTENTIONALLY SEW CONFUSION INTO THIS CASE BY MISREPRESENTING THE STATED FACTS IN BOTH THE PLAINTIFFS ORIGINAL AND AMENDED COMPLAINTS, INCORRECTLY INSINUATING STATUTES OF LIMITATIONS BEGIN AT DATES THAT WOULD TIME-BAR CLAIM, AND FLAT OUT LIEING TO THIS COURT IN ORDER TO HAVE CLAIMS AGAINST THE DEFENDANTS DISMISSED SO THAT THE DO NOT HAVE TO FACE A JURY TRIAL ( SEE ATTACHED EXHIBIT A THATS ATTACHED TO SUPPORTING DECLARATION TO REVIEW THE EVIDENCE OF LIEING TO THE COURT TO HAVE CLAIMS DISMISSED AGAINST DEFENDANTS SGT. TORIBIO, OFC. PREDMORE, OFC. YOUNG, AND OFC. KENITZER, FROM ORIGINAL COMPLAINT.) THE DEFENDANTS HAVE STOOPED TO WITHHOLDING NOTICE OF COURT RULINGS IN THIS CASE, WITHHOLDING SERVICE OF FILED MOTIONS AND RESPONSES, AND INSUFFICIENTLY SERVING PLAINTIFF WITH THEIR MOTIONS AND REPONSES SO THAT THE PLAINTIFF CAN NOT FILE HIS OWN MOTIONS OR REBUT THEIR MOTIONS AND FILE RESPONSES BEFORE DEADLINES. FURTHERMORE, THE DEFENDANTS, SOME WHO WORK AT THE PRISON THE PLAINTIFF IS HOUSED AT BUCF, HAVE USED THEIR INFLUENCE AND POWER TO RETALIATION AND INTERFERE WITH ACCESSING THE COURT TO OBSTRUCT AND IMPEED THE PLAINTIFFS ABILITY TO LITIGATE PRO-SE. ( AS STATED IN "PLAINTIFFS MOTION FOR TRO AND PRELIMINARY INJUNCTION TO END RETALITORY PRACTISES AND INTERFERENCE FOR ACCESSING THE COURTS ". AND " PLAINTIFFS MOTION FOR TRO AND PRELIMINARY INJUNCTION TO HALT RETALITORY REMOVAL OF PC OFFENDERS FROM BUCF PROTECTIVE CUSTODY UNIT LP.") ANY TACTIC TO UNDERMINE THE PLAINTIFFS CASE HAS BEEN ATTEMPTED AND USED BY THE DEFENDANTS . FORE THEY KNOW THAT AS COOC STAFF AND AGENTS, THEY ANSWER TO NO ONE AND DO NOT FEAR ANY FORM OF PUNISHMENT FOR THE TACTICS THEY ARE USING AGAINST THE PLAINTIFF. HOWEVER, THE DEFENDANTS DO ~~actically and fear~~ ~~contact this court as~~ FEAR A PUBLIC JURY TRIAL, WHERE THE SHOCKING FACTS OF THIS CASE CAN BE HEARD IN THIS COURT AND THE DEFENDANTS WILL BE FORCED TO SUPPLY A MORE PLAUSIBLE EXPLANATION TO THE PLAINTIFFS ALLEGATION AND EVIDENCE THAN THE DEFENDANTS ARE WITHOUT SUFFICENT KNOWLEDGE AND INFORMATION TO ADMIT OR DENY CLAIMS,

WHICH IS EXACTLY WHAT THE DEFENDANTS STATED IN THEIR PREVIOUS ANSWERS.

## I. PLAINTIFF RESPONDS TO TIME-BARRED CLAIMS AGAINST DEFENDANTS TRANI AND REED

THE PLAINTIFF REFERS TO DEFENDANTS TRANI AND REED "AS" DEFENDANTS", BECAUSE THE DEFENDANTS COUNSEL EVEN REFERS TO THEM AS "DEFENDANTS," AND SINCE THE PLAINTIFF HAS BEEN DEPRIVED OF HIS RIGHT TO HAVE ACCESS TO THE LAW LIBRARY TO PREPARE BOTH HIS ORIGINAL AND AMENDED COMPLAINTS HE ISN'T AWARE OF AN ALTERNATIVE FOR THESE DEFENDANTS. THE PLAINTIFF'S ACTUAL REFERENCE MATERIAL ON "HOW" MOTIONS AND RESPONSES ARE TO BE FORMATTED AND EVEN TERMINOLOGIES OF LAW IS PULLED DIRECTLY FROM THE DEFENDANTS OWN MOTIONS AND RESPONSES. THE PLAINTIFF IS TRYING TO BE SIMPLE. AND WHETHER OR NOT ANY CLAIMS AGAINST DEFENDANTS TRANI AND REED HAVE BEEN DISMISSED BY THIS COURT DOESN'T DOES NOT CHANGE THE ROLES THEY PLAYED IN THIS CASE. THE PLAINTIFF IS ONLY RELATING THE DETAILS OF THE FACTS IN CHRONOLOGICAL ORDER. THE PLAINTIFF IS NOT A SAVY LITIGATOR WITH THE KNOW HOW, OR EVEN ACCESS TO RESEARCH MATERIALS TO LEARN HOW TO "RESUSCITATE" THE CLAIMS AGAINST DEFENDANTS TRANI AND REED. SO ANY PERCEPTION OF SOME DEVIOUS PLOY ISN'T INTENTIONAL, FORE THE PLAINTIFF IS LITERALLY COPYING THE DEFENDANTS COURT FILINGS.

## II. PLAINTIFF'S CLAIMS AGAINST PREVIOUSLY-UNNAMED-DEFENDANTS ARE NOT TIME-BARRED

PLAINTIFF'S CLAIMS AGAINST DEFENDANTS FINNIGAN, ELIZABETH WOOD, AUSTIN CHRISTENSON, CM DENWALT, ERNEST MONTANEZ, CM SKRUGGS, AND CM RODRIGUEZ ARE NOT BARRED BY THE 2 YEAR STATUTE OF LIMITATIONS, BECAUSE THEY $\underline{DO}$ RELATE BACK TO PLAINTIFF'S ORIGINAL COMPLAINT. THESE DEFENDANTS OF THE PC REVIEW BOARD WOOD, CHRISTENSEN, DENWALT, MONTANEZ, SKRUGGS, AND RODRIGUEZ WERE ONLY UNNAMED. THOUGH THEIR POSITIONS UPON THE PL REVIEW BOARD AND THE CLAIMS AGAINST "THEM" THEIR COLLECTIVE DECISION-TO-DENY-PLAINTIFF PLACEMENT IN PC FOR HIS OWN SAFETY AND IGNORING HIS REPORTS OF BEING IN DANGER" ONLY A FEW DAYS BEFORE THE MURDER ATTEMPT ON THE PLAINTIFF ARE THE SAME. PLAINTIFF ONLY INCLUDES MORE DETAILS AND SPECIFICS AND CLARIFIED THE PROCESS OF HOW THESE DEFENDANTS OF THE PC REVIEW BOARD REVIEWED HIS REPORTS WHILE APPLYING FOR PC ALMIN, AND THE POWER THEY HAD TO IMMEDIATELY APPROVE THE PLAINTIFF FOR PC, WHICH THEY DID NOT DO. DEFENDANT FINNIGAN WAS INCLUDED IN THE PLAINTIFFS ENTIRE ORIGINAL COMPLAINT, BUT WAS ACCIDENTALLY LEFT OFF THE DEFENDANT LIST AT THE BEGINNING OF THE 1983 PACKET.

### A. DEFENDANT FINNIGAN

THIS COURT HAS PERMITTED THE DEFENDANTS TO MAKE CORRECTIONS FOR MISTAKES THEY HAVE MADE DURING THIS CASE AND EVEN GRANTED THE DEFENDANTS A EXTENSION OF TIME TO FILE A RE-SPONSE TO PLAINTIFFS TRO AND PRELIMINARY INJUNCTION (DOC.72) AFTER MISSING DEADLINE TO FILE A RESPONSE. THE PLAINTIFF DID NOT OBJECT TO THESE MISTAKES THE DEFENDANTS MADE IN AN ATTEMPT TO BENEFIT, THOUGH HE PROBABLY SHOULD HAVE, THE PLAINTIFF DID NOT DEPRIVE THE DEFENDANTS THE ABILITY TO CORRECT THEIR MISTAKES. AND THE RECENT MOTION TO STRIKE FILED BY THE PLAINTIFF AGAINST "DEFENDANTS FINAL MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFFS AMENDED COMPLAINT", AND, DEFENDANTS MOTION TO DISMISS PLAINTIFFS AMENDED COMPLAINT" WERE ONLY FILED AFTER PLAINTIFF ALL BUT BEGGED THE DEFENDANTS TO MAIL THE SERVED COPIES OF THEIR MOTIONS AND RESPONSES TO THE CORRECT ADDRESS ON THIS COURTS

SINCE SEPTEMBER 2017, THEREFORE, DEFENDANTS WERE GIVEN AMPLE TIME TO CORRECT THEIR MISTAKE, BUT FAILED TO DO SO. THE PLAINTIFFS FIRST OPPORTUNITY TO AMEND HIS COMPLAINT CORRECT THE MISTAKE OF LEAVING DEFENDANT FINNIGAN OFF THE DEFENDANT LIST WAS WHEN PLAINTIFF WAS GIVEN LEAVE TO AMEND HIS COMPLAINT ON MARCH 12, 2021 AND FILED ON MARCH 16, 2021. SO IF THE PLAINTIFF IS UNABLE TO CORRECT THIS SINGLE MISTAKE HE UNDERSTANDS, BUT BY DEFENDANT FINNIGAN "SOLE" ACTION OF OPENING THE PLAINTIFF CELL DOOR (AFTER PLAINTIFF TOLD HIM NO TO BECAUSE INMATES WERE GOING TO ATTACK HIM) THE 3 ATTACKING OFFENDERS WERE GIVEN DIRECT ACESS TO THE PLAINTIFF, WHICH RESULTED IN THE MURDER ATTEMPT ON FEB. 22nd 2017. THE SIGNIFICANCE OF DEFENDANTS FINNIGANS ACTIONS CAN NOT BE MINIMIZE BY DEFENDANTS COUNSEL AS "ALLEGATIONS"... RELATE SOLEY TO DEFENDANT ACTIONS THE EVENING OF FEB. 22, 2017. EVERYTHING IN PLAINTIFFS AMENDED COMPLAINT RELATES BACK TO THE ORIGINAL COMPLAINT, WITH THE SINGLE CORRECTION OF PLACING ~~DEFENDAN~~ DEFENDANT FINNIGAN ON THE DEFENDANT LIST.

## B. PREVIOUSLY UNNAMED DEFENDANTS OF THE PROTECTIVE CUSTODY REVIEW BOARD

THE DEFENDANTS ATTEMPTS TO MISREPRESENT THE DATE IN WHICH THE PLAINTIFF SEEKS RELIEF FROM DEFENDANTS OF THE PC REVIEW BOARD' WOOD, CHRISTENSON, DENWALT, MONTANEZ, SKRUGGS, AND RODRIGUEZ AS BEING IN AUGUST 2016. HOWEVER THAT IS INCORRECT. THE PLAINTIFF EXPLAINS THAT THESE SAME DEFENDANTS OF THE PC REVIEW BOARD DENIED HIM PLAINTIFF AFTER READING THE EXTREMILY DETAILED REPORTS OF SAFETY ISSUES IN THE PLAINTIFFS REQUEST FOR PC FORM AND AFTER HAVING A VIDEO CONFERENCE WHERE HE DIRECTLY SPIKE TO THEM OF HIS ISSUES AND ANSWERED THEIR QUESTIONS IN EVEN MORE DETAIL, JUST TO ESTABLISH THAT BEFORE THEY DENIED HIM PLACEMENT IN PC ON OR ABOUT FEB 16TH, ~~2017~~ 2017 THEY HAD KNOWLEDGE OF HIS ISSUES. THE AUGUST 2016 DENIAL OF PC WAS AT A COMPLETLY DIFFERENT FACILITY, STERLING CORRECTIONAL FACILITY AND HAPPENED BEFORE HE WAS TRANSFERRED TO CSP IN OCTOBER 2016. THE PLAINTIFFS ORIGINAL COMPLAINT AND AMENDED COMPLAINT BEGINS BY THE WRITTEN FACT OF PARAGRAPH #1," ~~ON~~ ON OR ABOUT OCTOBER 2016, THE PLAINTIFF, (JOHN STANDLEY SNORSKY, ~~ARRIVED~~ ARRIVED AT COLORADO DEPT. OF CORRECTIONS ("CDOC") FACILITY COLORADO STATE PENITENTIARY ("CSP")." THE PLAINTIFF ONLY REFERS TO BEING DENIED PC IN AUGUST 2016 AS HE REPORTED HIS ISSUES TO CSP STAFF UPON HIS ARRIVAL IN OCTOBER 2016. THE PLAINTIFF, THEREFORE DID NOT STATE ANY CLAIM AGAINST THE DEFENDANTS OF THE PC REVIEW BOARD AT THAT TIME BECAUSE THE PLAINTIFF WAS DESCRIBING REPORTING THIS TO CSP INTAKE STAFF. SINCE THE PLAINTIFF IS REPORTING THIS DENIAL OF PC TO CSP INTAKE STAFF HE ISNT DIRECTLY MAKING A CLAIM AGAINST THESE DEFENDANTS OF THE PC REVIEW BOARD, BUT ONLY RELATING THE HISTORY TO THE CSP STAFF IN THE "PAST TENSE."

IN PARAGRAPH 37 OF AMENDED COMPLAINT PLAINTIFF BEGINS TO DIRECTLY CLAIM TO THIS COURT THAT ON FEB 11TH, 2017 HE FILLED OUT A "REQUEST FOR PC" FORM WITH DETAILED WRITTEN REPORTS OF HIS SAFETY ISSUES. HE THEN GAVE THIS "REQUEST FOR PC FORM TO INTEL OFFICER ABBOT AND ABBOT INFORMED THE PLAINTIFF THAT HE WOULD LEARN IF HE IS ACCEPTED OR DENIED PC AT A LATER TIME.

THEN IN PARAGRAPH 45-52 DIRECTLY EXPLAINS HOW PLAINTIFF LEARNS OF THESE DEFENDANTS OF THE PC REVIEW BOARD, WHO WERE PREVIOUSLY UNNAMED, ELIZABETH WOOD, AUSTIN CHRISTENSON, DENWALT, ERNEST MONTANEZ, SKRUGGS, AND RODRIGUEZ DENYING HIM PLACE-

ment in PC on that exact day of Feb.16,2017 at CSP., the Plaintiff directly claims that on that same day, CSP Intel officer Defendant Brandon Hacias, who is also a member of PC Review Board, informs the Plaintiff that the collective decision of the PC Review Board, which includes Defendants Wood, Christensen, Denault, Montanez, Skruggs, and Rodriguez, to deny him PC was final and that these previously unnamed Defendants of the PC Review Board might accept the Plaintiff for PC if he exhibited good behavior for a extended period of time, and it was expected of the Plaintiff to not even defend himself against the inmates who were attempting to murder him. Therefore these direct claims against previously unnamed Defendants of the PC Review Board are being described in both his original and amended complaint to be happening to the Plaintiff at that exact time, in the present tense. In both complaints he is not recalling what happened month or years before, as these things are transispiring the Plaintiff details these claims as they happen. Therefore, these direct, present tense claims against the previously unnamed Defendants of the PC Review Board are what leads to the Plaintiff being almost murdered at CSP 5-6 days later, which is the tragic event he based his entire complaint upon. The Feb.11, 2017 date, when the Plaintiff fills out and gives Abbott the PC request form is before these previously unnamed Defendants denied him PC. However on Feb.16,2017 by the I identifying the exact inmates in his Living unit E, Pod 5, Bottom tier, Samson, Lazaro, and Clark to have already attack him in his cell or got these offenders to attack the Plaintiff, which was ultimately organized by Chad Merrill who sent documents to other inmates to prove the Plaintiff to be a snitch (Merrill was representing himself Pro-se in the 1st murder case #20151CR151 which permitted him to possess these court documents) the Plaintiff's safety could've been ensured by the Defendants of the PC Review Board, had they approved him for PC, then these same inmates he report would not have been able to attempt to murder him. It is this Feb 16, 2017 date when these previously unnamed Defendants failed to protect the Plaintiff from the exact inmates he reported to be immediate threats to his life. Therefore statutes of limitations begin on Feb 16,2017 for the Plaintiffs claims against previously unnamed Defendants Wood, Christensen, Denault, Montanez, Skruggs, and Rodriguez.

Furthermore, the Plaintiffs claims against these previously unnamed Defendants of the PC Review Board relate back to the original complaint because all that is different in the amended complaint is the Defendants are identified and more details are included to the same exact original claim which do not change the claim that these previously unnamed Defendants failed to investigate Plaintiffs safety issues, did not take his reports of being in danger serious, and took no reasonable measures to ensure his safety.

Moreover these previously unnamed Defendants immediately knew they had made a serious mistake in denying the Plaintiff placement in PC when he was seriously injured in the murder attempt on Feb 22,2017, only 5-6 days after

⑤

THE DENIAL. THE PREVIOUSLY UNNAMED DEFENDANTS ACKNOWLEDGED THEIR MISTAKE OF IGNORING THE PLAINTIFFS SAFETY CONCERNS AND DENYING HIM SAFETY IN PC WHEN THEY COLLECTIVELY DECIDED TO REVERSE THEIR PREVIOUS DENIAL, CORRECTING THEIR MISTAKE, AND SUDDENLY APPROVING THE PLAINTIFF FOR PC. ONLY ONE MONTH LATER WHEN THE PLAINTIFF WAS MEDICALLY CLEARED TO LEAVE THE INFIRMARY. ALSO WITH THE PLAINTIFF ALMOST BEING MURDERED ONLY DAYS AFTER THESE PREVIOUSLY UNNAMED DEFENDANTS DENIED HIM PC THEY WERE ACUTELY AWARE OF THEIR CULPABILITY IN FAILING TO PREVENT THE MURDER ATTEMPT AND THAT THEY WERE POTENTIALLY AT-RISK OF BEING NAMED IN THIS LAWSUIT. FOR THE COUNSEL OF THE DEFENDANTS TO SUGGEST THAT THE PLAINTIFFS REQUEST FOR PC, WHICH WAS DENIED BY THESE DEFENDANTS, WAS "LIKELY UNREMARKABLE IN CONTEXT TO THE REVIEW BOARD'S DAY-TO-DAY FUNCTIONING" WHEN THE PLAINTIFF WAS NEARLY MURDERED SOON AFTER THEIR DENIAL WOULD SUGGEST THAT THIS REVIEW BOARD'S DAY-TO-DAY FUNCTIONING IS DENYING INMATES PLACEMENT IN PC SO THAT THEY CAN BE SUBJECTED TO MURDER ATTEMPTS SOON THERE AFTER. IF THIS IS INDEED TRUE, THEN THE DEFENDANT SHOULD BE UNDER A FEDERAL CRIMINAL INVESTIGATION FOR SUBJECTING INMATES TO DAILY MURDER ATTEMPTS THEY HAVE BEEN WARNED ABOUT AND THEY COULD'VE EASILY PREVENTED BY APPROVING THEM FOR PC. HOWEVER THIS IS ONLY ANOTHER ATTEMPT TO MINIMIZE THE PLAINTIFF AND HIM BEING BRUTALLY BEATENED AND STABBED 43 TIMES AS "UNREMARKABLE", WHILE THE DEFENDANTS ARE SUPPOSEDLY FAR TO IMPORTANT TO EVEN NOTICE THAT THE PLAINTIFF (WHO IS A PRISONER WITH A VERY HIGH PROFILE CRIMINAL CASE, A UNIQUE AND RARE NAME OF SALOSKY THAT NO ONE CAN FORGET, AND A PRACTISING JEW WHO WEARS A YARMULKE, YOU KNOW THE FUNNY LITTLE JEW HAT.) IS IN THE ICU FROM A NEAR-FATAL ASSULT THEY HAD BEEN GIVEN THE DUTY OF A PC REVIEW BOARD MEMBER TO PREVENT. THE ONLY THING THAT STRAINS PLAUSIBILITY WITH IS THESE DEFENDANTS WERE SOMEHOW OBLIVIOUS TO THE POTENTIAL OF THEM BECOMING DE-FENDANTS IN THIS CASE, WHILE THEY ACTIVELY SUBJECT THE PLAINTIFF TO RETALIATION AND OBSTRUCT HIS ABILITY TO LITIGATE. IN FACT PREVIOUSLY UNNAMED DEFENDANTS DENWALT AND CHRISTENSEN ARE ATTEMPTING TO HAVE THE PLAINTIFF REMOVED FROM PC AND SENT TO CSP, THE MOST DANGEROUS PRISON IN COLORADO, WHERE THEY KNOW HE'LL BE ASSULTED AND LIKELY KILLED BY ANOTHER INMATE. IF THE PLAINTIFF IS DEAD THIS CASE IS EFFECTIVELY DISMISSED.

### III.  DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

THE CONSTITUTION IMPOSES ON THE DEFENDANTS A DUTY TO PROTECT! TO "TAKE REASONABLE MEASURES TO GUARENTEE THE SAFETY OF INMATES." AND TO PROTECT THEM FROM "VIOLENCE AT THE HANDS OF OTHER PRISONERS," FARMER V. BRENNAN, 511 U.S. 825, 834 (1994) (QUOTING RHODES V. CHAPMAN, 452 U.S. 337, 347 (1981). THE SUPREME COURT HOLDS THAT "BECAUSE INMATES ARE PLACED INTO DANGEROUS ENVIRONMENTS AND "STRIPPED ... OF VIRTUALLY EVERY MEANS OF SELF-PROTECTION ... AND ACCESS TO OUTSIDE AID, THE GOVERNMENT AND THEIR OFFICIALS ARE NOT FREE TO LET THE STATE OF NATURE TAKE ITS COURSE." FARMER, 511 U.S. AT 833 CITING DESHANEY V. WINNEBAGO COUNTY DEPT OF SOCIAL SERVS, 489 U.S. 189, 199-200 (1989). WITH ONE PLAINTIFFS SAFETY ISSUES BEING LONG-STANDING AND CSP'S OVERWHELMING AMOUNT OF INMATE VIOLENCE, THE RISK OF PLAINTIFF BEING SUBJECTED

To serious body harm was obvious, "that a prison official knew of a substantial risk from the very fact it was obvious." Farmer, 511 U.S. at 842. These Defendants knew of the substantial risk of serious harm to the Plaintiff, but exhibited their deliberate indifference by failing to take reasonable protective measures in response to the known risk of assult.

Deliberate indifference to not only the Plaintiffs safety, but other offender safety seems to be the common practise of CDOC staff. On July 15th 2021 the Plaintiff, along with offender Jesse James #164510, and Jeffery Hoskins #202203 were removed from protective custody at BVCF PC unit 6P and transferred to Colorado State Penitentiary ("CSP"), Colorados most violent and dangerous facility, despite all of these offenders having serious confirmed safety issues that resulted in them being assulted and surviving murder attempts from other inmates in general population. Now these former PC offenders James, Hoskins, and the Plaintiff have been placed back at-risk of serious body harm, which BVCF officials, along with Defendant Austin Christensen and CDOC officials at headquarters know of the risk to these offenders safety, but do not care if they are assulted or killed in their custody. At this very moment the Plaintiff is housed at CSP with offender Chad Wesley Merrill who is the white supremest that orchestrated the Feb 22nd 2021 murder attempt on the Plaintiff with the hope the Plaintiff would die and not be able to testify against Merrill at the 1st murder trial (case no. 2015CR75). Any reasonable person could see that the Plaintiff can not be housed in general population and especially can not be housed at CSP with Merrill who has tried to have the Plaintiff murdered repeatedly. So why is the Plaintiff housed in general population with inmates wholl assult him and try to kill him at CSP? What could the purpose of this be? Is it so the Plaintiff is murdered? A dead Plaintiff means that lawsuit goes away, and a dead Plaintiff is cheaper than any financial damages awarded at trial, or any settlement that could be negotiated. If this doesn't cause any one to ask questions of this culture of deliberate indifference to offenders safety, especially the Plaintiffs safety, then the Plaintiff wonders what will?... His death?

⑦

THE SUPREME COURT HAS SAID THAT " IT DOES NOT MATTER WHETHER THE RISK COMES FROM A SINGLE SOURCE OR MULTIPLE SOURCES. ANY MORE THAN IT MATTERS WHETHER A PRISONER FACES AN EXCESSIVE RISK OF ATTACK FOR REASONS PERSONAL TO HIM OR BECAUSE ALL PRISONERS IN HIS SITUATION FACE SUCH A RISK" FARMER V. BRENNAN 511 U.S. 825, 843, 114 S.CT. 1970 (1994). THUS THERE ARE TWO KINDS OF FACT SITUATIONS THAT THE PLAINTIFF HAS ESTABLISHED DELIBERATE INDIFFERENCE! THAT PRISON OFFICIALS AND STAFF FAILED TO RESPOND TO THE PART-ICULAR THREAT AND DANGER TO THE PLAINTIFF; AND, THAT THE PLAINTIFF WAS ASSULTED AS A RESULT OF PRISON CONDITIONS AND PRACTICES THAT ARE DANGEROUS TO ALL PRISONERS.

THE DEFENDANTS WHO STOOD BY, DOING NOTHING ABOUT THE ASSULT ON THE PLAIN-TIFF EXHIBITED THEIR DELIBERATE INDIFFERENCE .WHILE THEY KNEW THE PLAINTIFF WAS AT-RISK OF SERIOUS HARM AT THE HANDS OF OTHER OFFENDERS. SEVERAL OF THESE SAME DEFENDANTS ,"OFFICERS" WHO HEARD OTHER PRISONERS THREATS AND INSULTS AT PRISONER ACCUSED OF HIGHLY PUBLICIZED " CRIMINAL CASE AND PUT PLAINTIFF IN GENERAL POPULATION COULD BE FOUND DELIBERATELY INDIFFERENT WEISS V COOLEY, 230 F.3d 1027,1029-30, 1032-33 (7TH CIR. 2000). MANY WERE DIRECTLY WARNED OF THE DANGER THE OTHER INMATES IN PLAINTIFFS HOUSING PRESENTED .BUT NO ONE CARED.

THESE DEFENDANTS TAKE EXTRAORDINARY TO PROTECT THEMSELVES BUT AS THE PLAIN-TIFF BEGGED EVERY OFFICIAL AND OFFICER HE COULD FOR HELP AND TO BE PROTECTED NOT ONE OF THESE DEFENDANTS CARED BECAUSE OF THE WIDESPREAD "CULTURE" OF CDOC STAFF BEING DELIBERATELY INDIFFERENT TO OFFENDERS SAFETY, ESPECIALLY THE PLAINTIFFS SAFETY. AS DISPLAYED BY THE PLAINTIFF BEING REMOVED FROM PROTECTIVE CUSTODY, AGAIN, AFTER BVCF AND CDOC OFFICIALS KNOW OF THE RISK OF SERIOUS HARM TO THE PLAINTIFF HAVING ALREADY BEEN SUBJECTED TO A MURDER ATTEMPT AT CSP, THESE OFFICIALS "STILL" PLACED THE PLAINTIFF AT CSP. THIS FORM OF DELIBERATE INDIFFERENCE ACTUALLY PASSES THE THRESHOLD OF MALICIOUS INTENT AND APPEARS TO BE INTENTIONAL. THEREFORE ,THIS DELIBERATE INDIFFERENCE THAT SEEMS TO PUT THE PLAINTIFF AT-RISK OF HARM AND ASSULT ON PURPOSE BY CDOC LEADERSHIP "TRICKLE DOWNS" TO THE CDOC STAFF WHO INTERACT DAILY WITH OFFENDERS. THE ONLY SAFETY THAT IS CARED ABOUT IS THAT OF THE DEFENDANTS. AS IF CDOC STAFF ENSURE INMATES ARE AT EACH OTHER THROATS, WHILE CDOC STAFF PROTECT EACH OTHER AND THEMSELVES, AND WITH INMATES ATTACKING EACH OTHER THEY HAVE NO TIME TO EVEN THINK ABOUT CDOC STAFF, WHICH FURTHER PROTECT CDOC STAFF SAFETY.

CDOC STAFF ARE KNOWN TO PLACE INMATES LIKE THE PLAINTIFF IN THE EXACT SITUATIONS WITH THE EXACT OFFENDERS WHO'll ATTACK HIM. ITS AS IF THEY ARE SETTING UP THE PLAINTIFF TO BE ATTACKED. AND WITH THE PLAINTIFF FILING THIS LAWSUIT AND BEING KNOWN FOR FILING GRIEVANCES ON MISCONDUCT OR ISSUES HES GIVING CDOC STAFF THE CHANCE TO CORRECT, THE PLAINTIFF IS FACED WITH RETALIATION THAT NOW PLACES HIM AT CSP AND IN EXTREME DANGER OF ASSULT FOR SPEAK OUT AGAINST CDOC STAFF. ALSO WITH THE PLAINTIFF SPEAKING OUT HIS CELLMATE WHO WITNESSED THE RETALIATION AND WROTE DECLARATIONS FOR THE PLAINTIFF NOW JESSE JAMES #160570 HAS BEEN TARGETED TO BE ASSULTED AND KILLED AT CSP ALL BECAUSE JAMES HELPED THE PLAINTIFF SPEAK OUT IN THIS LAWSUIT.

THESE DEFENDANTS ARE NOT ENTITLED TO "QUALIFIED IMMUNITY" FORE THEIR DE-LIBERATE INDIFFERENCE RESULTED IN THE PLAINTIFF BEING GRIEVOUSLY INJURED. HAD ANYONE OF THESE DEFENDANTS DID THEIR DUTY TO PROTECT THE PLAINTIFF THIS FEB 8and 2017 murder ATTEMPT wouldn't HAVE HAPPENED. HOWEVER THEY DID'NT CARE FOR THE PLAINTIFFS SAFETY OR DIDN'T WANT TO "cause waves" BY PRESSING FOR THE PLAINTIFFS SAFETY, WHICH IS OPPOSITE OF CDOCS CULTURE.

### a. PLAINTIFF STATES A DELIBERATE INDIFFERENCE CLAIM AGAINST DEFENDANTS SHERWOOD, PARLETT, STITT, VALDEZ-GONZALES, ARNOLD, ALLENBACK, JORDAN, ELLIS, BARNES, AND BUSCH

#### i. DEFENDANT SHERWOOD

DEFENDANT SHERWOOD WAS THE UNIT F SUPERVISOR AND WAS WELL INFORMED OF THE PLAINTIFFS ISSUES AND FEARING ASSULT BY INMATES IN HIS PREVIOUS HOUSING WHO HAD ALREADY ATTACKED HIM SEVERAL TIMES. THEREFORE BY DEFENDANT SHERWOOD THREATENING AND PREPARING TO USE VIOLENCE TO FORCE THE PLAINTIFF TO RETURN TO THE EXACT PREVIOUS HOUSING HE REPORTED TO HAVE BEEN ATTACKED BY THE OTHER INMATES DEFENDANT SHERWOOD DISPLAYED HIS DELIBERATE INDIFFERENCE TO PLAINTIFFS SAFETY BY FORCING HIM TO RETURN TO THE PREVIOUS HOUSING WHERE HE WAS NEARLY KILLED THE NEXT DAY. NO MATTER WHAT DEFENDANT SHERWOOD WAS GOING TO FORCE THE PLAINTIFF TO BE HOUSED WITH THE SAME INMATES HE WAS REQUESTING PROTECTION FROM. AND BEING A UNIT SUPERVISOR DEFENDANT SHERWOOD HAD POWER TO CHANGE THE PLAINTIFFS HOUSING SO HE DIDN'T RETURN TO THE SAME HOUSING. FURTHER DEFENDANT SHERWOOD FOLLOWING

THE UNREASONABLE ORDERS TO RETURN PLAINTIFF TO UNSAFE HOUSING BY ANY MEANS
NECASSARY, EVEN USING FORCE STILL MAKES HIM LIABLE AND DELIBERATE INDIFFERANCE
FORE ANY REGULAR PERSON WOULD QUESTION SUCH IRRATIONAL AND WRECKLESS ORDERS. DE-
FENDANT SHERWOOD DIDN'T QUESTION ORDERS AND IS DELIBERATELY INDIFFERENT TO THE
PLAINTIFFS SAFETY AND IS NOT ENTITLED TO QUALIFIED IMMUNITY.

### ii. DEFENDANTS PARLETT AND STITT

AS COOL OFFICERS IT IS DEFENDANTS PARLETT AND STITTS DUTY TO ENSURE THE
PLAINTIFFS SAFETY. WHILE DEFENDANTS PARLETT AND STITT ESCORTED PLAINTIFF TO THE
UNIT F (HOLE) THEY KNEW THE PLAINTIFF WASN'T IN TRUOBLE, BUT WAS BEING
PLACED IN THE HOLE TO HAVE HIS SAFETY INVESTIGATED. THEREFORE ONCE OTHER IN-
MATES BEGAN TO THREATEN AND INSULT THE PLAINTIFF IN THEIR PRESENCE IT WAS THEIR
DUTY TO REPORT THAT THEY WITNESSED THE THREATS AND INSULTS ESPECIALLY SINCE THEY
KNEW THE PLAINTIFFS SAFETY WAS BEING INVESTIGATED. BY NOT REPORTING PLAINTIFF
BEING VIOLENTLY THREATONED. BY INMATES HE DIDN'T KNOW THE MOMENT HE
WALKED INTO UNIT F WOULD ESTABLISH DELIBERATE INDIFFERENCES, FORE THE RE-
PORT WOULD BE DOCUMENTED PROOF OF PLAINTIFFS SAFETY BEING AT-RISK. BY NOT
REPORTING ANYTHING THE PLAINTIFF WAS DENIED PC PLACEMENT.

WITH THE PLAINTIFF BEING ATTACKED ON FEB 22nd 2021 AND DEFENDANTS STITT
AND PARLETT, AND THE 15-20 OTHER CSP STAFF NOT INTERVENING IN THE ATTACK AND
NOT EVEN HAVING MEDICAL STAFF ON STANDBY THEY DISPLAY THEIR DELIBERATE INDIFFERENCE,
ALONG WITH THE LARGE GROUP OF CSP STAFF WHO WATCHED THE MURDER ATTEMPT. THE
COUNSEL FOR DEFENDANTS ATTEMPT TO CLAIM THE PLAINTIFF IS "LUMPING." THE DEFENDANTS
PARLETT AND AND STITT INTO 15TO20 OTHER CSP STAFF WHO ONLY WATCHED THE MURDER ATTEMPT
AS IF THEM BEING IN A HUGE GROUP OF ARMED CSP STAFF FAILING TO RESPOND TO
THE MURDER ATTEMPT OBSOLVES THEM OF NOT INTERVENING. PARLETT AND STITT AND
THIS HUGE GROUP OF CSP STAFF WATCHING THE ASSULT ON THE PLAINTIFF TAKE PLACE
SIMPLY REFUSED TO DO THEIR JOBS, WHEN THEY ALL TOO THE JOB OF WORKING IN A
PRISON FULLY AWARE THERE WOULD ALWB E RISK INVOIVED. AND THE LARGE NUMBER
OF ARMED STAFF WATCHING THE ASSULT ONLY MAKES IT MORE UNREASONABLE THAT NO ONE
INTERVENED AND RESPONDED APPROPRIATELY. THE DEFENDANTS DISPLAYED THEIR DELIBERATE
INDIFFERENCE ALONG WITH THE 15-20 OTHER STAFF WHO WATCHED THE ASSULT AND ARE NOT
ENTITLED TO QUALIFIED IMMUNITY.

### iii. DEFENDANT VALDEZ-GONZALES

DEFENDANT VALDEZ-GONZALES HAS WITNESSED HUNDREDS OF OFFENDERS BEING ASSULTED AT CSP AND WAS FULLY AWARE THAT THE PLAINTIFF FACED SUBSTANTIAL RISK OF SERIOUS HARM IF HE WAS TO BE RETURNED TO HIS PREVIOUSLY HOUSING. IF DEFENDANT VALDEZ-GONZALES AND ALL THE OTHER DEFENDANTS CLAIM THEY DID DRAW INFERENCE THAT PLAINTIFF WAS A MURDERER THEN WHY DOES DEFENDANT VALDEZ-GONZALES AND THE OTHER DEFENDANTS TAKE EXTRAORDINARY SAFETY PRECAUTIONS TO GUARENTEE GUARENTEE THEIR OWN SAFETY, SUCH AS FORCING INMATES AT CSP TO BE HANDCUFFED BEHIND THEIR BACKS BEFORE HAVING ANY CONTACT WITH INMATES? THERE-FORE WHEN THE PLAINTIFF EXPLAINED TO DEFENDANT VALDEZ-GONZALES THAT IF HE RETURNED TO THE PREVIOUS HOUSING THE OTHER INMATES WHO HAD ALREADY ATTACKED HIM WILL TRY TO KILL HIM FOR BEING A "SNITCH" IN THE MURDER CASE AGAINST MERRILL THERE'S NO WAY DEFENDANT VALDEZ-GONZALES COULD NOT HAVE DRAWN INFERENCE THAT THE PLAINTIFF FACED A SUBSTANTIAL RISK OF ASSULT DEATH. ESPECIALLY WITH DAILY STABBINGS, ASSULTS AND FIGHTS TAKING PLACE AT CSP. PLAINTIFFS CLAIMS AGAINST DEFENDANT VALDEZ-GONZALES SHOULDN'T BE DISMISSED AND SHE ISN'T ENTITLED TO QUALIFIED IMMUNITY.

### IV. DEFENDANTS ARNOLD AND ALLENBACK

DEFENDANTS ARNOLD AND ALLENBACK HAVE WITNESSED HUNDREDS OF STABBING AND ASSULTS AT CSP AND "KNOW" WHEN INMATES TARGET A SINGLE OFFENDER LIKE THE PLAINTIFF IT ALWAYS LEADS INTO MORE SERIOUS INCIDENTS OF VIOLENCE. HAD THOSE INMATES INSULTED DEFENDANTS ARNOLD AND ALLENBACK AS THE LEFT FELES FOR THEM TO FIND, STEP IN THE DEFENDANTS WOULD HAVE CHARGED THE INMATE SAYING HE DID IT WITH ATTEMPT ASSULT WITH A BODILY SUBSTANCE WHICH HOLDS "CRIMINAL" CHARGES THAT CAN ADD YEARS TO A PRISONERS SENTENCE. THE DEFENDANTS WOULD NOT THOUGHT IT FUNNY AND DISMISSED IT HAD IT NOT HAPPENED TO THE PLAINTIFF. AT A EXTREMELY VIOLENT FACILITY LIKE C.S.P. INCIDENTS LIKE THIS HAVE RESULTED IN MURDERS. SO TO DISMISS ANY FORM OF THREATS AND INSULTS AGAINST THE PLAINTIFF IS EXTREMELY WRECKLESS. FORE THAT FORM OF DISRESPECT IN "PRISON", WHERE RESPECT IS IMPORTANT, IS THE CANARY IN THE COAL MINE BECAUSE INMATES LIKE THE PLAINTIFF WHO ARE OPENLY THREATENED AND IN-SULTED MEANS OTHER INMATES HAVE NO RESPECT FOR THE PLAINTIFF AND THE ONLY INMATES WHO ARE DISRESPECTED IN SUCH WAYS ARE THE VULNERABLE AT-RISK OF ASSULT AND VICTIMIZATION IN-MATES OR ENEMY GANG MEMBERS. BOTH OF THESE WILL RESULT IN A VIOLENT INCIDENT THAT

CAN BE PREVENTED IF PRISON STAFF TAKE REASONABLE MEASURES. AT THE "LEAST" DEFENDANTS ARNOLD AND ALLENBACK COULD'VE FILED A REPORT. THE REPORTS OF THESE INCIDENTS WOULD CLEARLY SHOW THE PLAINTIFF AS A TARGETTED INMATE IN NEED OF PLACEMENT IN PROTECTIVE CUSTODY. WITH MOST OFFICIALS IN CDOC NEVER HAVING DAILY INTERACTIONS WITH PRISONERS ITS THE REPORTS OF THE OFFICERS AND SGTS LIKE DEFENDANTS ARNOLD AND ALLENBACK THAT THE REVIEW AS "DOCUMENTATION PROOF" OF BEING VICTIMIZED. THEREFORE WITH CSP OFFICERS TURNING A BLIND EYE TO THE PLAINTIFF BEING ATTACKED, THREATENED AND INSULTED, LIKE DEFENDANTS ARNOLD AND ALLENBACK DID, MADE IT SO OFFICIALS DIDN'T HAVE DOCUMENTATION OF THE PLAIN-TIFF BEING TARGETED. WHICH WOULD'VE CONTRIBUTED IN HIM BEING PLACED IN PC AND NOT BEING SUBJECTED TO THE 2017 MURDER ATTEMPT. DEFENDANTS ARNOLD AND ALLENBACK ARE NOT ENTITLED TO QUALIFIED IMMUNITY AND PLAINTIFFS CLAIM SHOULDN'T BE DISMISSED.

## V. DEFENDANT BARNES

LIKE WITH DEFENDANTS ARNOLD, ALLENBACK, VALDEZ-GONZALES, SATT, AND PARLETT, BARNES HAD DAILY INTERCALTIONS WITH THE PLAINTIFF, DEFENDANT BARNES WITNESSED THE PLAINTIFF BEING THREATENED, INSULTED AND PREVIOUSLY ASSULTED, HOWEVER SHE REFUSED TO REPORT TO THE INTEL OFFICERS WHAT SHE WITNESSED, FORE SHE SAID THAT COULD JEOPARDIZE HER JOB, (APPEARING TO FAVOR THE PLAINTIFF OR STAND UP TO PROTECT HIM]. BY NOT REPORTING WHAT SHE HAS WITNESSED THE INTEL OFFICERS COULD CLAIM THE PLAINTIFF FACED NO DANGER AND DID NOT NEED PLACEMENT IN PC. THE INTEL OFFICERS KNEW WHAT WAS GOING ON WITH THE PLAINTIFF BEING TARGETTED BY OTHER INMATES FOR BEING A "SNITCH" BUT FOR SOME REASON THEY DIDN'T CARE TO PROTECT THE PLAINTIFF. HAD DEFENDANT BARNES DID HER DUTY TO REPORT THAT THE PLAINTIFF WAS OFTEN TARGETTED AND AT-RISK OF ASSULT AT CSP THEN INTEL OFFICERS COULDN'T DENY THAT FACT. DEFENDANT BARNES" DID NOT "TAKE ACTION TO TRY TO ABATE HARM TO THE PLAINTIFF AND TO CLAIM DEFENDANT BARNES TELLING THE PLAINTIFF TO TALK TO INTELLIGENCE OFFICERS THAT DIDN'T LISTEN TO THE PLAINTIFF, BECAUSE NO OFFICERS FILED ANY REPORTS, IS ABATING HARM TO THE PLAINTIFF IS LAUGHABLE. IF DEFENDANT BARNES IS "ABATING" HARM TO THE PLAINTIFF BY TELLING HIM TO GO TALK TO SOMEONE ELSE TO HELP HIM THEN THAT WOULD MEAN ANY OFFICER OR CDOC OFFICIAL WHO KNEW OF THE SUBSTANTIAL RISK OF SERIOUS HARM TO THE PLAINTIFF OR ANY

(12)

OTHER OFFENDER IN THEIR CARE AND CUSTODY CAN SAY THE PLAINTIFF SHOULD TALK TO
SOMEONE ELSE AND BE OBSOLVED OF ALL LIABILITY. THE DEFENDANT FAILED TO REPORT
THAT SHE KNEW THE PLAINTIFF WAS BEING TARGETED AND WAS AT SUBSTANTIAL RISK
OF ASSULT AND DEATH. THIS FAILURE BY DEFENDANT BARNES RESULTED IN PLAINTIFF
HAVING NO DOCUMENTATION FROM CSP STAFF THAT HE NEEDED PLACEMENT IN PC FOR
HIS OWN SAFETY AND THE FEB 2017 murder ATTEMPT ON HIS LIFE. THE PLAINTIFFS
CLAIMS SHOULDN'T BE DISMISSED AND DEFENDANT BARNES IS NOT ENTITLED TO QUALIFIED
IMMUNITY. THE PLAINTIFF CONTENDS THAT WITH DISCOVERY AND 아래 DEPOSITION OF DE-
FENDANT BARNES THIS COURT WILL LEARN "WHY" BARNES FEARED FOR HER JOB IF SHE
REPORTED THE PLAINTIFFS SAFETY ISSUES.

### Vi. DEFENDANT ELLIS

DEFENDANT ELLIS, LIKE NEARLY ALL OFFICERS AND CSP STAFF KNEW CSP ISN'T A
REGULAR PRISON. CSP HOUSES THE MOST DANGEROUS INMATES IN COLORADO WHO REGULARLY
ASSULT OFFENDERS AND PRISON STAFF, CARRY DEADLY WEAPONS, ARE GANG LEADERS
AND MEMBERS, AND HAVE MURDERED OTHER INMATES AND STAFF. DEFENDANT ELLIS KNEW
OF THE PLAINTIFFS BEING TARGETTED FOR BEING A "SNITCH" FOR YEARS AND ABSOLUTELY
DREW THE INFERENCE THAT THE PLAINTIFF FACED A SUBSTANTIAL RISK OF HARM. THIS IS WHAT
DEFENDANT ELLIS WAS REFERRING TO WHEN DEFENDANT ELLIS WAS SYMPATHETIC TO HIS
SITUATION OF NOT BEING ABLE TO GO TO PROTECTIVE CUSTODY WHICH MEANS THE PLAINTIFF
IS TRAPPED AT THE EXTREMELY VIOLENT CSP WHERE HE'll CONTINUE TO BE ATTACKED
AND AT-RISK OF BEING MURDERED. DEFENDANT ELLIS HAD HEARD OTHER OFFICERS
TALKING ABOUT HIM HAVING "ISSUES." BEING ATTACKED, BY OTHER INMATES. THE PLAINTIFF
IS WELL KNOWN AT CSP BY STAFF AND INMATES SINCE HE HAS SPENT APPROX.
6½ YEARS AT CSP. EVERY STAFF MEMBER KNEW THE PLAINTIFF WAS BEING TARGETED
BUT DEFENDANT ELLIS AS LIKE ALL THE OTHER OFFICERS DID NOT REPORT HIM
BEING AT SUBSTANTIAL RISK OF SERIOUS HARM. WITH DEFENDANT ELLIS NOT DOCUMENTING
THE INSULTS AND DANGER THE PLAINTIFF WAS IN AT CSP OFFICIALS THEN USED THE
LACK OF THIS DOCUMENTATION TO DENY PLAINTIFF PLACEMENT IN PC. THE PLAINTIFF WAS
ALMOST MURDERED DAYS LATER. THE DEFENDANT ELLIS DOES NOT QUALIFY FOR IMMUNITY
AND SHOULD NOT HAVE CLAIMS DISMISSED.

## VII. DEFENDANT JORDAN

DEFENDANT JORDAN KNEW OF PLAINTIFF'S ISSUES OF BEING ATTACKED BY INMATES SINCE JANUARY 12, 2016 WHEN INMATE LONNIE HERRERA THREW FECES AND URINE ON THE PLAINTIFF THEN ATTEMPTED TO STAB THE PLAINTIFF IN UNIT B1 AT CSP. DEFENDANT JORDAN WAS SHOOTING A SHOTGUN WITH RUBBER BULLETS THROUGH THE HANDCUFF SLOT IN THE UNIT B1 DOOR TO STOP THE ASSULT ON THE PLAINTIFF. ALSO WHEN DEFENDANT'S COUNSEL IS TRYING AGAIN, TO CLAIM THE PLAINTIFF IS "GENERICALLY" DESCRIBING HIS SAFETY ISSUES" TO DEFENDANT JORDAN IS TRYING TO CONFUSE THIS COURT. THE PLAINTIFF TALKED WITH DEFENDANT OF HIS SAFETY ISSUES DESCRIBED IN THE COMPLAINT, AND SINCE DEFENDANT JORDAN PERSONALLY WITNESSED THE PREVIOUS ASSULT ON THE PLAINTIFF BY INMATE LONNIE HERRARA THERE'S NO REASONABLE WAY DEFENDANT JORDAN DID NOT KNOW OF THE SUBSTANTIAL RISK OF SERIOUS HARM THE PLAINTIFF FACED. THE PLAINTIFF NEEDED OFFICERS AND PRISON STAFF TO DOCUMENT THE DAILY THREATS AND HARASSMENT TO PROVE THE SUBSTANTIAL RISK OF SERIOUS HARM HE FACED. HOWEVER THE FAILURE OF DEFENDANT JORDAN TO REPORT THE DAILY THREATS AND INSULTS THAT HE WITNESSED PREVENTED THE PLAIN-FROM BEING PLACED IN PROTECTIVE CUSTODY WHICH SUBJECTED THE PLAINTIFF TO THE FEB 22, 2021 murder ATTEMPT. DEFENDANT JORDAN IS NOT ENTITLED TO QUALIFIED IMMUNITY AND SHOULD'NT HAVE CLAIMS DISMISSED.

## VIII. DEFENDANT BUSCH

IN THE "DEFENDANTS motion TO DISMISS PLAINTIFF AMENDED COMPLAINT" UNDER THE DEFENSE AND JUSTIFICATION TO DISMISS CLAIMS AGAINST DEFENDANT BUSCH ON PAGE 19, THE DEFENDANTS COUNSEL, AGAIN, TRIES TO CONFUSE THIS COURT BY STATING THAT THIS ENCOUNTER WITH DEFENDANT BUSCH TOOK PLACE ON OR ABOUT FEB 10TH 2021, WHEN THE AMENDED COMPLAINT STATES FEB 16TH 2021 AFTER THE PLAINTIFF MET WITH DE-FENDANT HALKINS. THEN THE REST OF THE JUSTIFICATION OF WHY THE PLAINTIFF CLAIMS SHOULD BE DISMISSED AGAINST "DEFENDANT BUSCH" ONLY CONTAINS A DEFENSE TO DISMISS PLAINTIFFS CLAIMS AGAINST "DEFENDANT BARNES". BY STATING A DEFENSES FOR DEFENDANT BARNES (NOT DEFENDANT BUSCH) THE PLAINTIFFS

CLAIMS AGAINST DEFENDANT BUSCH SHOULD NOT BE DISMISSED.

### X.   CONCLUSION FOR DEFENDANTS ~~ROBERT~~ PARLETT, STITT, VALDEZ-GONZALES, ARNOLD, ALLENBACK, JORDAN, ELLIS, BARNES, AND BUSCH :

DEFENDANTS PARLETT, STITT, VALDEZ-GONZALES, ARNOLD, ALLENBACK, JORDAN, ELLIS, BARNES, AND BUSCH ARE CSP STAFF THE PLAINTIFF HAD DAILY CONTACT WITH AND WITNESSED THE THREATS, INSULTS, AND VICTIMIZATION OF THE PLAINTIFF. SINCE THESE DEFENDANTS HAVE THIS DAILY INTERACTIONS WITH THE PLAINTIFF IT'S THEIR DUTY TO LOOK OUT FOR SIGNS OF VICTIMIZATION AND EVEN A "CHANGE" IN THE PLAINTIFFS BEHAVIORS, AND MOODS, WHICH CAN BE TELL TALE SIGNS OF SOMETHING BEING "WRONG." AT CSP WHERE THERE'S AN OVERWHELMING AMOUNT OF INMATE VIO-LENCE THESE DEFENDANTS AND OTHER PRISON STAFF ARE TRAINED AND WARNED TO KEEP A LOOK OUT FOR ANYTHING IN INMATES BEHAVIORS, ACTIVITIES, AND MOODS THAT MAY SEEM "OFF", FORE NEARLY ALL VIOLENT INCIDENTS BEGIN WITH INMATES BEING "OFF" OF THEIR REGULAR ROUTINES, ~~ROBER~~ ACTIVITIES AND MOODS. BEING AWARE OF THINGS THAT ARE OFF WITH INMATES AT CSP CAN HELP THESE DEFENDANTS SAFETY SINCE THEY CAN PREPARE FOR THE COMING VIOLENCE. HOWEVER THESE DEFENDANTS WHO HAVE DAILY INTERACTIONS WITH THE PLAINTIFF HEARD THE INSULTS AND THREATS AND KNEW THE PLAINTIFF WAS A TARGETTED OFFENDER AT SUBSTANTIAL RISK OF SERIOUS HARM. IT IS THEIR DUTY TO LOG AND AT THE LEAST PLACE NOTATIONS IN THE PLAINTIFFS "CHRONOLOGICAL" LOG, ATTACHED TO HIS FILE FOR REVIEW OF THEIR SUPERIORS. BY NOT DOING THEIR DUTIES TO REPORT AND DOCUMENT WHAT THEY WITNESSED ON A DAILY BASIS OF HOW OTHER OFFENDERS INSULTED AND THREATENED THE PLAINTIFF THERE WAS NO DOCUMENTATION OF THE PLAINTIFF BEING TARGETTED AND NEEDING PLACEMENT IN PC. HAD THESE DEFENDANTS LOGGED AND REPORTED WHAT THE WITNESSED THEIR WOULD HAVE BEEN AN ABUNDENCE OF DOCUMENTED PROOF SHOWING THAT THE PLAINTIFF FACED A SUBSTANTIAL RISK OF SERIOUS HARM AT COLORADOS MOST DANGEROUS PRISON C.S.P, AND THE PLAINTIFF WOULD'VE BEEN PLACED IN PC FOR HIS OWN SAFETY AND NEVER EXPERIENCED THE 2017 MURDER ATTEMPT.

(15)

B. **Plaintiff states a claim against CDOC and CSP's command structure**

Plaintiff asserts claims against Defendant Rich Raemisch, CDOC Executive Director, and Defendant Travis Trani, CSP for "Creating", Enforcing, and Up-holding policies that endangered the entire inmate population at CSP, including the Plaintiff and deprived him of any means to seek redress for being housed in extremely violent housing while the Plaintiff was at substantial risk of serious harm from other offenders. This lead to Plaintiff being subjected to the Feb. 22nd 2017 murder attempt which these Defendants have attempted to cover up and hide.

i. **Plaintiff states a claim for liability against Defendant Rich Raemisch**

The Plaintiff alleges that Defendant Raemisch "Created" new policies at CSP which allowed for Colorados most dangerous inmates to come out of their cells for 4 hours a day which immediately resulted in a emense amount of inmate violence. This policy change by Rich Raemisch made CSP into Colorados most dangerous prison that endangered the inmates and staff. As CSP became a violent facility where inmates were being assulted and murdered regularly, Defendant Raemisch did public media interviews with local media and National Geographic channel to claim falsely that CSP's new policy changes he enacted were a success, and Raemisch hid the fact that the inmates and staff were in fear for their lives, which caused dozens of CSP officers/staff to retire early, request transfers, and flat out quit. This obvious threat of substantial serious harm to all offenders resulted in the Plaintiff being subjected to the 2017 murder attempt directly due to Defendant Rich Raemisch policy changes at CSP.

The Plaintiff also alleges that Defendant Raemisch upheld some Grievence procedures but also established procedures that required the

PLAINTIFF AND ALL OTHER OFFENDERS TO DISCLOSE "WHY" THEY NEEDED A GRIEVENCE, WHICH PERMITTED CDOC AND CSP STAFF TO WITHHOLD GRIEVENCES FROM THE PLAINTIFF. THIS POLICY CHANGE STYMIED THE PLAINTIFFS AND MANY OTHER OFFENDERS ABILITY TO MEET PLRA REQUIREMENTS OF EXHAUSTING ADMINISTRATIVE REMEDIES AND WAS INTENDED TO PREVENT THE PLAINTIFF AND OTHER INMATES AT CSP FROM FILING LAWSUITS ON THE CONDITIONS OF CONFINEMENT AT LSP FOR THE OVERWHELMING VIOLENCE.

DEFENDANT RAEMISCH WAS WELL AWARE THAT THE ENACTED POLICIES AT CSP CREATED A EXTREMELY UNSAFE ENVIORNMENT THAT PLACED ALL CSP IN-MATES AT SUBSTANTIAL RISK OF SERIOUS HARM AND DEATH1 INCLUDING THE PLAINTIFF. DEFENDANT RAEMISCH THEN LIED TO COVER-UP THE TERRIBLE VIOLENCE AT CSP AND MADE IT SO THE CSP STAFF COULD SCREEN WHO WAS GIVEN AN GRIEVENCE AND WHO COULDN'T ACQUIRE A GRIEVENCE TO SILENCE THE PLAINTIFF AND OTHER INMATES FROM REVEALING THE OVERWHELMING VIOLENCE AT CSP IN A LAWSUIT. WHICH MADE IT SO THE PLAINTIFF HAD NO WAY TO SEEK ANY FORM OF REDRESS TO ENSURE HIS SAFETY. THESE FACTS ESTABLISH AN AFFIRMATIVE LINK TO DE-FENDANT RAEMISCH CREATING AND TRYING TO HIDE THE UNCONSTITUTIONAL CONDITIONS AT CSP FORE RAEMISCH; (1) DIRECTLY ORDERED THE POLICY CHANGES; (2) HAD "MORE" THAN A "CAUSAL CONNECTION; AND (3) DISPLAYED A CULPABLE STATE OF MIND BY LIEING TO BOTH THE LOCAL AND NATIONAL MEDIA AND TRYING TO COVER-UP AND HIDE THE OVERWHELMING DAILY VIOLENCE AT CSP HE AND GOV. HICKENLOOPER CREATED.

THEREFORE DEFENDANT RAEMISCH IS NOT ENTITLED TO QUALIFIED IMMUNITY AND THE PLAINTIFFS CLAIMS AGAINST HIM SHOULD NOT BE DISMISSED.

### ii. PLAINTIFF STATES A CLAIM FOR RELIEF AGAINST DEFENDANT TRANI, BUT UNDERSTANDS CLAIMS BEING DISMISSED

THE PLAINTIFF DID NOT DEVISE SOME CUNNING PLOY TO "RESSUSITATE" CLAIMS AGAINST DEFENDANT TRANI. HOWEVER THE DEFENDANTS COUNSEL CONTINUE TO MISREPRE-SENT THE "DATES" OF THE PLAINTIFFS CLAIMS TO GAIN ADVANTAGE IN THIS CASE. SO TO CLARIFY THE PLAINTIFF WILL CORRECT THE MISREPRESENTED DATES.

(17)

THE PLAINTIFF'S COMPLAINT AND AMENDED COMPLAINT ALONG WITH SUPPORTING DOCUMENTS AND EXHIBITS EXPLAIN THAT DEFENDANT TRANI IS THE HEAD MEMBER OF CSP's I CC ("Internal CLASSIFICATION COMMITTEE") WHO DIRECTLY CONTROLS WHERE OFFENDERS AT CSP, INCLUDING THE PLAINTIFF IS HOUSED. (ICC BOARD RULINGS CAN NOT BE CHALLENGED BY GRIEVANCE AND ARE FINAL) THE DEFENDANTS CONTINUE TO IMPLY DATES IN 2016 AS WHEN THE STATUTE OF LIMITATIONS BEGAN TO OBTAIN DISMISSAL FOR DEFENDANT TRANI. HOWEVER THE PLAINTIFFS ORIGINAL AND AMENDED COMPLAINTS STATE THAT THE PLAINTIFFS PLACEMENT IN "SPECIAL HOUSING" WAS UP TO THE ICC BOARD AND DEFENDANT TRANI. THEREFORE ONCE THE PLAINTIFF WAS PLACED IN UNIT F SEGRECATION ON FEB 10TH 2021 SO HIS SAFETY ISSUES CAN BE "INVESTIGATED" ON FEB 10TH 2021. THE DECISION TO RETURN THE PLAINTIFF TO THIS "SPECIAL HOUSING" HE WAS PREVIOUSLY IN AND HAD REPORTED THE OTHER OFFENDERS TO BE ATTACKING HIM IN WAS THE ICC BOARDS DECISION AND DE-FENDANT TRANI'S DESCRETION AND DECISION. THIS DECISION OF DEFENDANT TRANI TO RETURN TO THE REPORTED DANGEROUS PREVIOUS SPECIAL HOUSING WAS ON FEB. 21ST 2021. (THE PLAINTIFF HAD NO CHOICE BUT TO OBEY THIS DECISION, HERE HEO BE VIOLENTLY FORCED TO RETURN TO HIS PREVIOUS HOUSING BY CSP STAFF) THEREFORE THIS NEW DECISION TO RETURN TO HIS PREVIOUS HOUSING (DESPITE THE PLAINTIFF REQUESTING PC PLACEMENT TO GET AWAY FROM THE OFFENDERS WHO HAS ATTACKED HIM IN THAT HOUSING ARRANGEMENT) WAS MADE BY THE ICC BOARD AND DEFENDANT TRANI WAS MADE "AFTER" BEING PUT ON NOTICE OF THE PLAINTIFF BEING AT SUBSTANTIAL RISK OF ASSULT AND SERIOUS HARM IF HE WAS PUT BACK IN THIS PREVIOUS HOUSING. THEREBY THE STATUTES OF LIMITATIONS STARTS FOR DEFENDANT TRANI IS AND ALWAYS HAS BEEN ON FEB 21ST 2017 WHEN THE NEW DECISION TO RETURN PLAINTIFF TO THE PREVIOUS HOUSING AFTER BEING PUT ON NOTICE OF PLAINTIFFS SAFETY ISSUES. THIS HASN'T CHANGED AND THE PLAINTIFF CONTENDS THAT THE DEFENDANTS (COUNSEL HAS INTENTIONALLY TRIED TO SWITCH DATES AND CONFUSE THE COURT ON THE CHRONOLOGICAL TIMELINE

TO GAIN ADVANTAGE AND DISMISSAL FOR DEFENDANTS AT THIS EARLY STAGE OF THE
CASE TO AVOID DISCOVERY, DEPOSITION AND TRIAL.

### c. PLAINTIFFS CLAIMS AGAINST DEFENDANTS REED AND NEFF

#### i. DEFENDANT REED

JUST AS PLAINTIFF STATED FOR DEFENDANT TRANI, HE IS ONLY STATING WHAT
HAPPENED IN CHRONOLOGICAL ORDER, AND SINCE DEFENDANT REED WAS A MEMBER
OF "THE UNIT" THE CSP INTELLIGENCE OFFICERS IT WAS HER DUTY ALONG
WITH DEFENDANT HALANS AND OBUT TO "INVESTIGATE" THE PLAINTIFFS SAFETY
ISSUE WHICH THE UNIT REFUSED TO DO.

#### ii. DEFENDANT NEFF

DEFENDANT NEFF WAS PLAINTIFFS CASEMANAGER WHILE HE WAS IN UNIT F
FROM FEB. 10, 2017 TO FEB 21, 2017. THEREFORE, AS A CASEMANAGER DEFENDANT NEFF
HAS ACCESS TO BOTH THE PLAINTIFF'S REGULAR COOL FILE AND CAN ACCESS PLAINTIFFS
CONFIDENTIAL / RESTRICTED FILE. PLAINTIFF NEVER UNDERSTOOD WHY CDOC DID NOT PLACE
IN HIS FILE, OR ANY OTHER INMATES FILE, WHEN THE WERE VICTIMIZED; RAPED,
ROBBED, EXTORTED, ASSULTED BY OTHER OFFENDERS. ONLY THE PERPETRATOR WHO
VICTIMIZE INMATES HAVE THE INCIDENT PLACED IN THEIR FILE, NOT THE VICTIM.
THEREFORE IF THE VICTIM INMATE DOESN'T KNOW HIS PERPETRATORS NAME AND
COOL NUMBER, THE VICTIM CAN'T PROVE HE WAS VICTIMIZED. HOWEVER DEFENDANT
NEFF BECAME PLAINTIFFS CASEMANAGER FIRST BACK IN 2014, BETWEEN DEFEND-
ANTS NEFF, RICOTTA, AND BEELER THEY WERE PLAINTIFFS CASEMANAGERS FROM 2014
TO MID 2015, THEN FALL 2015 TO SUMMER 2016, THEN FALL 2016 TO SPRING 2017.
AT EVERY OPPORTUNITY THE PLAINTIFF STRESSED TO THESE DEFENDANTS THAT HE WAS
IN DANGER. PLAINTIFFS LOVED ONES AND FAMILY AND PUBLIC DEFENDERS REPEATEDLY
CONTACTED THEM INCLUDING DEFENDANT NEFF THAT PLAINTIFF WAS AT RISK OF
SERIOUS HARM. AS A CASEMANAGER DEFENDANT NEFF HAS DIRECT CHANNELS TO
THE HIGH RANKING OFFICIALS AT CSP / CDOC AND OF THE PC REVIEW BOARD. A
CASEMANAGER IS THE OFFICIAL MOST FAMILIAR WITH THE PLAINTIFFS CASE AND
SITUATION, DEFENDANTS NEFFS RECOMMENDATION TO PLACE PLAINTIFF IN PC WOULD
WEIGH ALOT TO THESE OTHER OFFICIALS, INCLUDING THE PC REVIEW BOARDS.

19

However, Defendant Neff (a man) never recommended the Plaintiff for PC and was actually threatening the Plaintiff with claiming his family and loved ones were harassing him with concerned calls and threatened to prevent them from visiting the Plaintiff.

When a offender like the Plaintiff met with Defendant Neff on Feb. 10th 2017 and disclosed all the issues surrounding his safety due to "snitching" on Chad Merrill in the murder case; which Defendant Neff knew about since fall 2015, the casemanager has a duty to log that report of being in danger in Plaintiffs file and then contact the PC review board, he did none of these things. All Defendant Neff did do was avoid meeting with the Plaintiff and threatening his family and loved ones and the Plaintiff to attempt to "shut" his family and loved ones "up".

### d. Protective Custody Review Board Members

The Defendants counsel, again, incorrectly state dates here for they claim that on Feb 10, 2017 that Plaintiff met with Defendant Hagans and was told he wouldn't be placed in PC since the PC review board had denied him. The correct date on the amended complaint is Feb. 16, 2017.

The Plaintiffs claims against Defendants Elizabeth Wood, Austin Christovsen CM Denwalt, Ernest Montanez, CM Skruggs, and CM Rodriguez is that after the Plaintiff filled out the PC request form with a detailed report that included the names of 6 offenders who are assulting him and want him dead along with the case no which the Plaintiff was to testify against Chad Merrill in the 1st° murder case and even the Lincoln County Combine court District Attorney's office phone numbers and address to confirm Plaintiffs claims of being a witness against Merrill. However these Defendants of the PC review board "reviewed" the Plaintiff PC request form and reports, but not a single one of these Defendant cared enough to call the District Attorneys office to confirm the Plaintiff was in fact a witness against Merrill at the up coming murder trial. Despite these Defendants of the PC review board having a duty to investigate the Plaintiffs safety to determine

HIS NEED FOR PROTECTIVE CUSTODY NOT ONE OF THESE DEFENDANTS DID THEIR
DUTY AS A PC REVIEW BOARD AND THESE DEFENDANTS MADE A "COLLECTIVE
DECISION" TO NOT EVEN INTERVIEW THE PLAINTIFF AND DISMISSED HIS SAFETY
ISSUES AND HIS REPORTS OF BEING AT SUBSTANTIAL RISK OF SERIOUS HARM
WITH EXTREME INDIFFERENCE, WHICH RESULTED IN THE ATTEMPTED MURDER OF THE
PLAINTIFF ONLY 5-6 DAYS LATER ON FEB. 22nd 2017.

THESE PC REVIEW BOARD DEFENDANTS WOOD, CHRISTENSEN, DENWALT, MOATANEZ,
SKRUGGS, AND RODRIGUEZ WRECKLESS DECISION TO DENY THE PLAINTIFF PC WHICH
THEY HAVE THE DIRECT POWER TO DO, FAILED -TO- PRODECT PROTECT THE PLAINTIFF
FROM THE MURDER ATTEMPT HE HAD WARNED THE ALL ABOUT. AND THESE DE-
FENDANTS DECISION TO DENY PLAINTIFF WAS FINAL FORE THE PLAINTIFF CAN
NOT SEEK REDRESS FOR OR CHALLENGE THROUGH THE GRIEVENCE PRO-
CEDURE, MEANING PLAINTIFF WAS FORCED TO REMAIN AT CSP IN GENERAL
POPULATION TO BE ASSULTED.

THESE PC REVIEW BOARD DEFENDANTS ALL DENIED THE PLAINTIFF PLACE-
MENT IN PC, WHICH IS THE IDENTIFIED ACTIONS THESE DEFENDANTS TOOK AGAINST HIM
AND FAILED TO PROTECT HIM FROM THE FOREWARNED MURDER ATTEMPT. AND ANY
REGULAR PERSON WHO REVIEWED THE PLAINTIFFS PC REQUEST FORM AND REPORTS
OF BEING A WITNESS WHO WAS TOLD TO SOON TESTIFY AGAINST CHAD MERRILL IN
THE 1ST° MURDER CASE, WHICH MERRILL WAS TRYING TO MURDER THE PLAINTIFF
TO PREVENT HIS TESTIMONY, THAT REGULAR PERSON WOULD IMMEDIATELY KNOW
THAT BY DENYING THE PLAINTIFF FOR PC WOULD FORCE HIM TO RETURN TO
THE GENERAL POPULATION WHERE HE WAS AT SUBSTANTIAL RISK OF SERIOUS
HARM OR DEATH. THEREFORE, THE DEFENDANTS COUNSELS CLAIMS THAT THESE
DEFENDANTS OF THE PC REVIEW BOARD DID NOT KNOW THAT BY REFUSING THE
PLAINTIFF PLACEMENT IN PC, THEY WERE BEING DELIBERATELY INDIFFERANT
TO HIS SAFETY IS LAUGHABLE AND HIGHLY UNLIKELY. FORE THEY ARE THE
PC REVIEW BOARD WHO APPROVES OR DENIES OFFENDERS PLACEMENT IN PC AND
THEY ARE FULLY AWARE THAT OFFENDERS WILL BE ASSULTED OR KILLED BY
OTHER OFFENDERS IF THEY ARE NOT PLACED IN PC FOR THEIR OWN SAFETY.
THE WHOLE REASON FOR PC IS TO PROTECT INMATES AT RISK OF SERIOUS HARM AND

THESE DEFENDANTS OF THE PC REVIEW BOARD ARE THE GATE KEEPERS OF PC. THEREFORE DENYING THE PLAINTIFF WHO HAD EXTENSIVE AND DETAILED INFORMATION OF HIM BEING AT SUBSTANTIAL RISK OF SERIOUS HARM FOR BEING A SNITCH IN A PRISON MURDER CASE AGAINST A POWERFUL WHITE SUPREMEST WOULD MAKE ANY REGULAR PERSON THINK TWICE AND POSSIBIE CALL THE DISTRICT ATTORNEY TO CONFIRM OR DISMISS THE PLAINTIFF CLAIMS BEFORE DENYING HIM PC. TO OUTRIGHT DISMISS THE PLAINTIFFS EXTREMELY SERIOUS CLAIMS OF BEING A WITNESS IN THE UPCOMING MURDER TRIAL WITHOUT TAKING THE TIME TO INVESTIGATE DISPLAYS A CULPABLE STATE OF MIND OF EXTREME INDIFFERENCE TO THE SAFETY OF THE PLAINTIFF. THEREBY THESE DEFENDANTS OF THE PC REVIEW BOARD WOOD, CHRISTENSEN, DENWALT, MONTANEZ, SKRUGGS, AND RODRIGUEZ DISPLAYED EXTREME DE-LIBERATE INDIFFERENCE AND RECKLESS DISREGARD FOR PLAINTIFFS SAFETY BY DENYING PLACEMENT IN PC 5-6 DAYS BEFORE THE FOREWARNED MURDER ATTEMPT ON FEB. 22nd 2017.

PLAINTIFF STATED MEMBERS OF THE PC REVIEW BOARD TOLD HIM NOT TO DEFEND HIMSELF THE NEXT TIME HE WAS ATTACKED BY OTHER INMATES TO PROVE HE WAS A VICTIM BECAUSE DEFENDANT HAGANS AND THE 2 OTHER CDOC OFFICIALS MEETING WITH THE PLAINTIFF WERE ALL MEMBERS OF THE PC REVIEW BOARD. PLAINTIFF IDENT-IFIED HAGANS AND THE UNNAMED CDOC OFFICIALS WITH HIM AS PC BOARD MEMBERS. HOWEVER THEIR SENTIMENTS WERE REFLECTING THE SENTIMENTS OF THE ENTIRE PC REVIEW BOARD. THEREFORE THEY REQUIRED THE PLAINTIFF BEING ~~BEATEN~~ BRUTALLY BEATEN AND STABBED ~~to~~ AS A PREREQUISITE FOR PLACEMENT IN PC, WHICH IS A VIOLATION OF HIS EIGHTH AMENDMENT RIGHTS.

THEREFORE PLAINTIFFS CLAIMS AGAINST THESE DEFENDANTS OF THE PC REVIEW BOARD SHOULD NOT BE DISMISSED.

## IV. PLAINTIFF STATES A CLAIM FOR IMPOSING OFFICIAL CAPACITY LIABILITY

THE PLAINTIFF ONLY SUES DEFENDANT RICH RAEMISCH. CDOC EXECUTIVE DIR-ECTOR IN HIS OFFICIAL CAPACITY, FORE IT IS FROM THIS POWERFUL POSITION THAT PERMITS DEFENDANT RAEMISCH THE AUTHORITY TO DIRECTLY ORDER WARDENS TO DO AS HE WISHED. DEFENDANT RAEMISCH IS THE HEAD "OF CDOC AND DIRECTLY ORDER-ED POLICY CHANGES A CSP THAT CREATED THE EXTREMELY DANGEROUS CONDITIONS THAT ENDANGERED ALL LSA OFFENDERS AND PLACED THEM ALL AT RISK OF SUB-

STANTIAL HARM, WHICH CREATED THE ENVIRONMENT WHERE PLAINTIFF WAS NEARLY KILLED. DEFENDANT RAEMISCH IS ALSO THE SOLE AUTHORITY FOR ALL POLICY AND PROCEDURES IN CDOC, THE GRIEVENCE PROCEDURE BEING ONE OF THEM. BY ONE DEFENDANT UPHOLDING, CREATING, AND ENFORCING GRIEVENCE POLICY THAT PREVENTS OFFENDERS AND PLAINTIFF FROM SEEKING REDRESS FOR THE MOST CRITICAL ISSUES AND IS DESIGNED TO THWART ANY INMATE ATTEMPTS TO MEET PLRA REQUIRE-MENTS OF EXHAUSTING ADMINISTRATIVE REMEDIES IN ORDER TO FILE A LAWSUIT TO SEEK REDRESS IN THE COURTS. THESE INSIDIOUS POLICIES & ~~IT DIRECTOR~~ DEFENDANT RICH RAEMISCH MADE IT SO THE PLAINTIFF WAS TRAPPED IN A VIOLENT PRISON WITH NO WAY TO SEEK ANY RELIEF FROM, AND DIRECTLY RESULTED IN THE PLAINTIFFS MURDER ATTEMPT ON FEB 22nd 2017.

THE PLAINTIFF DOES NOT MAKE INDIVIDUAL CAPACITY CLAIMS AGAINST DEFENDANT RICH RAEMISCH, ONLY OFFICIAL CAPACITY CLAIMS IN A ATTEMPT TO HAVE INJUNCTIVE RELIEF OF CHANGES TO CDOC GRIEVENCE PROCEDURES SO THAT THE PLAINTIFF AND ALL CDOC OFFENDERS HAVE FREE, UNRESTRICTED, UNSCREENED ACCESS TO ADMINISTRATIVE REMEDIES, WHICH HE CAN SEEK REDRESS FOR SAFETY ISSUES THAT NEARLY KILLED HIM. NO OFFENDER SHOULD HAVE TO BE SUBJECTED TO A ~~A~~ MURDER ATTEMPT OR ANY OTHER FORM OF VICTIMIZATION DUE TO BEING RESTRICTED FROM CHALLENGING THEIR UNSAFE HOUSING, CLASSIFICATION, AND IF THEY ARE EVEN PLACED IN A CELL WITH A PREDATORY INMATE WHOS RAPING, EXTORTING AND ASSULTING THE OFFENDER. CURRENT POLICIES PROHIBIT ANY OFFENDERS FROM SEEKING ADMINISTRATIVE REMEDIES ~~RED~~ FOR ALL OF THESE THINGS. ALSO THE CHANGE TO GRIEVENCES "RETURNING" TO BEING A DUPLICATED CARBON COPY WHERE OFFENDERS CAN KEEP A COPY TO PROVE THAT THEY SUBMITTED THE GRIEVENCE.

THEREFORE THE PLAINTIFFS CLAIMS SHOULDN'T BE DISMISSED AGAINST DEFENDANT RICH RAEMISCH.

## Conclusion

THE PLAINTIFF HAS ADEQUATELY ALLEGED EIGHTH AMENDMENT CLAIMS AGAINST DEFENDANTS RICH RAEMISCH, TRAVIS TRANI, ROBERT NEFF, CHRISTOPHER ARNOLD, JAMES ALLENBACK, JOHN JORDAN, DENESSA BARNES, DAWN BUSCH, TIMOTHY

PARLETT, DAVID STITT, JULIE VALDEZ-GONZALES, MICHEL SHERWOOD, DEFENDANT FINNIGAN, KORIE ELLIS, ELIZABETH WOOD, AUSTIN CHRESTENSEN, DENWALT, ERNEST MONTANES, CM SKRUGGS, AND CM RODRIGUEZ. HE ALSO ADEQUATELY ALLEGES AN OFFICIAL CAPACITY CLAIM AGAINST DEFENDANT RAEMISCH, THEREFORE THE "DEFENDANTS MOTION TO DISMISS PLAINTIFFS AMENDED COMPLAINT" SHOULD BE DENIED.

RESPECTFULLY SUBMITTED THIS 21ST DAY OF JULY, 2021.

S/1 John Snarsky
PLAINTIFF

JOHN SNARSKY #123847
C.S.P.
P.O. BOX 777
CANON CITY, COLORADO
81215

(24)