**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-03025-KLM

JOHN STANDLEY SNORSKY,

      Plaintiff,

v.

LESLIE BEELER,
DANIEL DENT,
BRANDON HAGANS,
NAMON CHASE,
MICHELLE MCVAY, and
KYLE ROBERTS, et al.,

      Defendants.

---

**PLAINTIFF JOHN SNORSKY'S
<u>UNOPPOSED</u> MOTION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM**

---

Plaintiff John Standley Snorsky, by and through his undersigned counsel, respectfully requests the Court issue a writ of *habeas corpus ad testifcandum* pursuant to 28 U.S.C. § 2241(c)(5) to: (i) permit his appearance and testimony at trial for March 29, 2023, to March 31, 2023; and (ii) permit his housing at the Colorado Department of Correction's Denver Reception and Diagnostic Center ("DRDC") for the week of March 27, 2023 to facilitate trial preparation with his counsel.

**<u>CERTIFICATE OF CONFERRAL</u>**

Pursuant to D.C.Colo.L.Civ.R. 7.1(A), counsel for Mr. Snorsky has conferred with counsel for Defendants regarding this Motion on February 22, 2023. Defendants <u>do not</u> oppose the relief requested herein.

## **ARGUMENT**

Under 28 U.S.C. § 2241(c)(5), the Court may issue a writ of *habeas corpus ad testificandum* if "[i]t is necessary to bring [the prisoner] into court to testify or for trial." Whether to issue the writ "rests in the sound discretion of the trial court." *Brady v. United States*, 433 F.2d 924. 925 (10th Cir. 1970); *see also Hawkins v. Maynard*, No. 95-6301, 1996 WL 335234, at *1 (10th Cir. June 18, 1996). In determining whether to issue such a writ, the Court "weigh(s) the prisoner's need to be present against concerns of expense, security, logistics, and docket control." *Valdez v. Motyka*, No. 15-CV-0109-WJM-STV, 2021 WL 1216525, at *1 (D. Colo. Mar. 31, 2021) (citations and internal quotation marks omitted). Where the case to be tried is the prisoner's own civil action, the Court should evaluate the prisoner's need to be present by considering "whether the [prisoner's] physical presence in the courtroom would substantially further the resolution of the case." *Jordan v. Pugh*, 484 F. Supp. 2d 1185, 1186-87 (D. Colo. 2007). If the prisoner is expected to testify, the Court should consider whether the prisoner's testimony will be "relevant, necessary, and non-cumulative." *Valdez*, 2021 WL 12165626 at *1 (citations and internal quotation marks omitted).

First, a writ is necessary to secure Mr. Snorsky's presence at the bench trial. He is currently incarcerated at Arkansas Valley Correctional Facility, 12750 CO-96, Ordway, Colorado 81034. His in-person appearance at trial is the only way to ensure that he can confer with his counsel in real-time—an advantage that cannot be underestimated at critical moments, such as during the examination of the CDOC employees who are expected to testify regarding Mr. Snorsky's history of requests for protective custody. Mr. Snorsky's in-person appearance is also necessary to avoid

the undue prejudice that would result from him appearing remotely. As this Court may recall, Defendants were unable to produce Mr. Snorsky via videoconference for the preliminary injunction hearing held on April 1, 2022, and Mr. Snorsky was forced to testify via telephone and was unable to confer with his counsel regarding witness examination in real time.

Second, Mr. Snorsky's testimony is undoubtedly relevant. As the Court is aware, the March 2023 bench trial will focus on whether Mr. Snorsky should remain in protective custody at Arkansas Valley, and under what circumstances (if any) Defendants shall be permitted to move him to another facility. The Court will be tasked with determining whether the relief Mr. Snorsky is requesting "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1). Mr. Snorsky is a key witness to "the violation of [his] Federal right[s]," by Defendants and likely the only witness who can speak to his repeated requests for protective custody, Defendants' denials of those requests, and the attempted murder of him by three CDOC inmates on February 22, 2017. *Id.* Given that Defendants have been unable to locate key documents and information regarding Mr. Snorsky's protective custody requests for the time period prior to the February 2017 attack, it will be crucial for the Court to hear from Mr. Snorsky directly what happened leading up to, during, and after the attack, and the injuries and after-effects it caused.

Additionally, the other factors weigh in favor of allowing Mr. Snorsky to attend trial in person. He does not pose any risk of escape or to the safety and security of the courtroom or its occupants. He has had no write-ups since being transferred to Arkansas Valley in May 2022, nor have Defendants identified any security risk from having him present in-person in the courtroom.

Finally, allowing Mr. Snorsky to appear at trial should not present unduly burdensome expense or logistical or docket challenges. Colorado federal courts have issued writs to similarly situated prisoner-plaintiffs to allow them to be present at their own civil trials. (*See generally Ex. A*, Orders Granting Motions for Writ of Habeas Corpus ad Testificandum from U.S. District Court Judges Christine M. Arguello, R. Brooke Jackson, William J. Martinez, and Marcia S. Kreiger.)

Because Mr. Snorsky's presence and testimony is essential in this trial, Mr. Snorsky requests that he be transported to the Colorado Department of Correction's Denver Reception and Diagnostics Center ("DRDC") for the week of March 27, 2023 to facilitate trial preparation. The Arkansas Valley Correction Facility is located in Ordway, Colorado – which is a six-hour round trip drive from the Denver metropolitan area (where undersigned counsel lives and works). It has also been standard practice that calls with Mr. Snorsky at the Arkansas Valley Correctional Facility must be scheduled 48 hours in advance and that policy runs the risk of being at odds with the need for adequate trial preparation. Thus, Mr. Snorsky's transportation to DRDC for the week of trial is necessary for undersigned counsel to adequately prepare with their client.

## CONCLUSION

For the reasons set forth above, Mr. Snorsky respectfully requests that the Court order the Clerk of Court to issue the attached Writ of Habeas Corpus ad Testificandum for Plaintiff John Standley Snorsky, DOC ID Number 123847, so that he may be present in this Court for trial in this matter beginning at 8:30 a.m. on March 29, 2023 and at the Colorado Department of Correction's Denver Reception & Diagnostic Center ("DRDC") starting on March 27, 2023. Undersigned counsel respectfully requests that the Court issue the writ ***by no later than March 1,***

4

*2023*, so that it can be provided to the Colorado Department of Corrections in time for Mr. Snorsky to appear at DRDC on March 27, 2023.

Respectfully submitted this 23rd day of February, 2023.

*s/ Kevin D. Homiak*
Kevin D. Homiak
HOMIAK LAW LLC
1001 Bannock Street, Suite 238
Denver, Colorado 80204
505-385-2614
kevin@homiaklaw.com

and

Erica T. Grossman
HOLLAND, HOLLAND EDWARDS &
GROSSMAN, PC
1437 High Street
Denver, CO  80218
erica@hheglaw.com

and

Brian Osterman
Kristen L. Ferries
Matt Rotbart
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
osterman@wtotrial.com
ferries@wtotrial.com
rotbart@wtotrial.com

*Attorneys for Plaintiff John Standley Snorsky*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically

via CM/ECF and thereby served on the following counsel of record:

- **Nathan Klotz**
  nklotz@dietzedavis.com

- **William Rogers**
  wrogers@dietzedavis.com

*s/ Jennifer A. Loadman*
Paralegal, Homiak Law LLC

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 17-cv-01341-CMA-STV

WALDO MACKEY,

      Plaintiff,

v.

BRIDGETTE WATSON, and
SUSAN PRIETO,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S UNOPPOSED
MOTION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM UNDER
28 U.S.C. § 2241**

---

      This matter is before the Court on Plaintiff Waldo Mackey's Unopposed Motion for Writ of Habeas Corpus Ad Testificandum Under 28 U.S.C. § 2241.  (Doc. # 262.)

      Plaintiff Waldo Mackey, CDOC # 82262, is a necessary and material witness in a civil jury trial scheduled to take place before the Hon. Christine M. Arguello on September 16, 2019, at 8:30 AM, and to last up to four days, in Courtroom A602 of the Arraj Courthouse, 901 19th Street, Denver, Colorado 80294.  Mr. Mackey is currently confined at the Fremont Correctional Facility in Cañon City, Colorado, in the custody of Warden Scott Dauffenbach.  In order to secure Mr. Mackey's attendance at this trial, it is necessary that a Writ of Habeas Corpus Ad Testificandum issue, ordering Mr. Mackey's custodian to produce him at the United States District Court for the District of Colorado.

Accordingly, it is ORDERED that:

1.     Plaintiff's Unopposed Motion for Writ of Habeas Corpus Ad Testificandum

       Under 28 U.S.C. § 2241 is GRANTED IN PART and DENIED IN PART.

       (Doc. # 262.)

2.     Plaintiff's Motion is GRANTED IN PART as to his request for a writ of

       habeas corpus ad testificandum.  A Writ of Habeas Corpus Ad

       Testificandum issue, under the seal of this Court, commanding the

       Warden of the Fremont Correctional Facility and the Colorado Department

       of Corrections to produce Inmate Waldo Mackey, CDOC # 82262 on

       September 16, 2019, at 7:30 AM, for a civil jury trial, in Courtroom A602 of

       the Arraj Courthouse, 901 19th Street, Denver, Colorado 80294, until the

       completion of the proceeding or as ordered by the Court, and thereafter to

       return Mr. Mackey to the Fremont Correctional Facility.

3.     Mr. Mackey's custodian is further ordered to notify the Court of any

       change in the custody of Mr. Mackey and to provide the new custodian

       with a copy of this Writ.

4.     Mr. Mackey shall be permitted to sit at counsel table through the civil jury

       trial without shackles and in civilian clothing provided by his counsel.

5.     Plaintiff's Motion is DENIED IN PART as to his request that he be

       transferred to a facility in the Denver metropolitan area a week prior to his

       trial to assist counsel with trial preparation.  This request is better lodged

with the Warden of the Fremont Correctional Facility and the Colorado

Department of Corrections.

DATED: August 20, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:10-cv-01005-RBJ-KMT

TROY ANDERSON,

      Plaintiff,

v.

STATE OF COLORADO, DEPARTMENT OF CORRECTIONS,
SUSAN JONES, in her official capacity as warden of Colorado State Penitentiary, and
ARISTEDES W. ZAVARAS, in his official capacity as Executive Director of the Colorado
Department of Corrections

      Defendants.

---

## WRIT OF HABEAS CORPUS AD TESTIFICANDUM

---

WHEREAS, it has been made to appear to this Court that TROY ANDERSON, 63877, is

now confined at Colorado State Penitentiary, Canon City, CO, and that his presence will be

necessary in this Court, no later than 8:00 a.m., on April 30, 2012, and to be returned to this

Court each day thereafter until discharged from said writ.

NOW THEREFORE, in the Name of the United States of America, WE COMMAND

SUSAN JONES, warden of said institution, to have the body of said PRISONER TROY

ANDERSON, 63877, under safe and secure conduct, in the U.S. District Court for the District of

Colorado, Alfred A. Arraj United States Courthouse, Courtroom A702, 901 9th Street, Denver,

Colorado 80294-3589, on the RETURN DATE indicated above.

WITNESS, the Honorable R. Brooke Jackson, U.S. District Judge, and the seal of the U.S.

District Court, on March 19, 2012.

FOR THE COURT:

GREGORY C. LANGHAM CLERK,


BY: s/ S. Hartmann


I, the undersigned, Clerk of the
United States District Court for the
District of Colorado, do certify that
the foregoing is a true copy of an
original document remaining on file
and of record in my office.
WITNESS my hand and SEAL of said
Court this 9th day of March 2012.
GREGORY C. LANGHAM
By_____
Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No.  09-cv-02329-WJM-KLM

ERIC CHRISTOPHER PROVENCIO,

    Plaintiff,

v.

C. STARK, and
D. RODENBECK,

    Defendants.

---

## ORDER GRANTING *WRIT OF HABEAS CORPUS AD TESTIFICANDUM*

---

This matter is before the Court on Plaintiff Eric Provencio's Motion for *Writ of Habeas Corpus Ad Testificandum* ("Motion") (ECF. No. 166).  The Bureau of Prisons ("Bureau") has filed a Response to Plaintiff's Motion (ECF No. 172) and Plaintiff Provencio ("Plaintiff") has filed a Reply (ECF No. 172).  The Motion is ripe for adjudication.  Having reviewed the relevant materials, Plaintiff's Motion is granted and the Court orders issuance of the *writ of habeas corpus ad testificandum*.

## I.  BACKGROUND

### A.    Factual Background

On October 10, 2007, Plaintiff was housed in the Bureau of Prisons at the United Sates Penitentiary, Administrative Maximum ("ADX").  The Defendants were employees at the ADX and were tasked to escort Plaintiff from an exercise cell.  (ECF No. 166 at 1-2.)  Plaintiff alleges that an incident occurred while being escorted by Defendants. Plaintiff alleges that both Defendants perpetrated an attack. (*Id.*)  Defendants admit they

are (or were) employees at ADX Florence at the time the incident occurred and were escorting Plaintiff to his cell on October 10, 2007. (ECF No. 35 at ¶ 7.)

Plaintiff is presently serving a 137-month sentence for bank robbery in violation of 18 U.S.C. § 2113(A), and a 24-month consecutive sentence for a supervised release violation.  (ECF No. 171 at 2.)  Plaintiff's Motion seeks to ensure that he is present at trial to, *inter alia*, provide live testimony and attend jury selection.[1]

## II.  LEGAL STANDARDS

A District Court has the power to procure a prisoner's presence and testimony through issuance of the writ of *habeas corpus ad testificandum.  Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir.1977) (citing 28 U.S.C. § 2241(c)(5)).  Whether to issue the writ rests within the "sound discretion of the district court." *Id.  See also Hawkins v. Maynard*, 89 F.3d 850 (10th Cir. 1996).[2]  While a prisoner has "no constitutional right to be present, or to testify, at his own civil trial, the district court may not summarily exclude a prisoner-plaintiff from the trial of a civil rights suit." *Ballard*, 557 F.2d at 480; *Hawkins* 89 F.3d 850.

To determine whether to issue *a writ of habeas corpus ad testificandum*, a court must "weigh the prisoner's need to be present" *agains*t "concerns of *expense, security, logistics and docket control*." *Hawkins* 89 F.3d 850 (citing *Muhammad* 849 F.2d at 111-12).  Many courts have directed that "consideration should [first] be given to

---

[1] On September 7, 2012, the Court added an Interested Party to this matter, namely, Federal Bureau of Prisons, pursuant to the filing of a pleading on same date.  This makes Plaintiff's procedural argument in the Reply redundant. (ECF No. 172 at 1.)

[2] *Hawkins* 89 F.3d 850 was unpublished, but cites the multi-factor test in *Muhammad v. Warden, Baltimore City Jail*, 849 F.2d 107, 111-12 (4th Cir.1988).  *See also Jordan v. Pugh*, 484 F. Supp. 2d 1185, 1187 (D. Colo. 2007), applying the *Muhammad* factors.

2

securing the prisoner's presence, at his own or government expense." *Muhammad* 849

F.2d at 111-12.  Once this threshold issue is assessed, courts are directed to weigh the

following factors—including: "(1) whether the prisoner's presence will substantially

further the resolution of the case; (2) the expense and security risk entailed in

transporting and holding the prisoner in custody for the trial; and (3) the likelihood that a

stay, pending the prisoner's release, will prejudice his opportunity to present his claim."

*Muhammad* 849 F.2d at 113.[3]

When credibility assessments are at issue, a court must also carefully weigh

such assessments against "expense and safety concerns." *Latiolais v. Whitley*, 93 F.3d

at 207-8 (5th Cir. 1996). "[C]redibility assessments" are an "important consideration"

when determining whether to issue a writ of *habeas corpus ad testificandum. Id.*  Given

the importance of credibility in cases such as the instant, the Court will address

credibility under the first factor (substantial resolution). *See Hawks v. Timms*, 35 F.

Supp. 2d 464, 465 (D.Md.1999).[4]

---

[3] The Court views the *Muhammad* factors substantially similar (if not the same) to the *Ballard* factors. See *Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir.1977).  But since the *Muhammad* was cited in *Hawkins v. Maynard*, 89 F.3d 850 (10th Cir. 1996) (*unpublished*), the Court adopts that specific approach.  Importantly, and irrespective of the approach adopted, both would yield the same result in this case.

[4] This Court issued a similar writ of *habeas corpus ad testificandum* in *Aranda v. Lt. McCormac et al.*, 2010 U.S. Dist Lexis 104854  (D. Colo. October 7, 2011). While that Order was limited in discussion, the Court adopted all of the plaintiff's motion (even if not expressly stated).  Much of that motion was dedicated to the very issue that is relevant in this case: credibility (an issue for this district, that was of first impression).There is no reason, *inter alia*, why *Aranda* does not support the Court's decision on the Motion.

### III.  ANALYSIS

**A.      Consideration of Whether the Presence of Prisoner-Plaintiff Can be Secured at his Own or Government Expense**

As a threshold matter, the Court finds that the Plaintiff's presence should be secured at the government's expense.[5]  *Muhammad* 849 F.2d at 112-13.  While the Bureau objects, the importance of the civil rights claims asserted in this case militates decidedly in favor of directing that provision be made for Plaintiff to attend his trial in person.  *Latiolais*, 93 F.3d at 207 (finding that civil rights actions are of "fundamental importance to our constitutional scheme because they directly protect our most valued rights.")  Therefore, the Court finds that the interests of justice would be best served by allowing Plaintiff an opportunity to participate in his own trial.

**B.      Weighing the Muhammad Factors**

The Court further concludes that the following factors support grant of Plaintiff's Motion for Writ of *Habeas Corpus Ad Testificandum*.[6]

1.      <u>Whether the Prisoner's Presence Will Substantially Further the Resolution *and* Whether Alternative Ways are Acceptable</u>

The first factor favors Plaintiff.  Much of Plaintiff's case comes down to the credibility of witnesses.  Plaintiff's case will rise and fall on whose testimony the jury will find more credible—that of Plaintiff, or that of Defendants.  The necessity for *in person* testimony is only heightened by the fact that there is little documentary evidence

---

[5]  The Court has reviewed Bureau's Brief regarding expenses, but finds that as a threshold matter it is feasible for Plaintiff to attend.  (ECF No. 171 at 5.) *See Hawks* 35 F.Supp.2d at 468 (holding that the government must pay for Plaintiff transport and detention.")

[6] The Court provides a record of the relevant factors because decisions such as this "require an adequate record of the decisional process." *Muhammad* 849 F.2d at 112-13.

regarding the October 10, 2007 incident. (ECF No. 166 at 4.)  There are no other eye witnesses to the incident other than Plaintiff and Defendants. (*Id.*)  Plaintiff is the only witness who can testify on his behalf concerning his own conduct during the incident—thus his entire case depends upon the credibility of his own testimony.  As such, the Court finds the credibility assessment of Plaintiff is a critical consideration that weighs in favor of granting Plaintiff's Motion. *See*, *Latiolais* 93 F.3d at 207-8.

Plaintiff's position is also supported by *Hawks* 35 F. Supp.2d at 465.  That case is instructive because the plaintiff's claim (excessive force) also rested solely on credibility.  Although the plaintiff had been convicted of serious crimes—resulting in a 26 year sentence—the court permitted the plaintiff's attendance at trial.  Plaintiff, here, is the principal witness in his case-in-chief.  The need for the triers of fact to observe the "principal witness" for credibility purposes requires "no elaboration." *Id.*  That was the holding in *Hawks*.  It is equally applicable in this case and weighs heavily in Plaintiff's favor in the issuance of the writ.  *See also Carter v. Hutto*, 781 F.2d 1028, 1032 (4th Cir. 1986) (stating "[w]here the record requires the trier of fact to make credibility choices, the need to observe the principal witnesses requires no elaboration.")

Under the first factor, the Court must also consider whether alternative ways exist to proceed with trial without Plaintiff's presence.  The Bureau contends that Plaintiff can attend via live video conference.  But problems exist with this alternative.  The reason is two-fold.  First, Plaintiff's case is dependent on credibility.  As addressed above, providing oral testimony from a prison conference room will seriously prejudice Plaintiff's position at his trial.  Second, the video conference poses problems for jury selection.  This alternative would mean that Plaintiff would have limited (or no opportunity) to

participate in the 'cut and thrust' of jury selection—a critical stage of the case, particularly where juror biases must be tested during the selection process. *See Latiolais*, 93 F.3d at 210-11.[7]  Because credibility is central to Plaintiff's claim—and live video conference would create obstacles for Plaintiff's jury selection—the Court finds that no acceptable alternative ways are available other than having Plaintiff attend trial in person.

Accordingly, the first factor weighs in Plaintiff's favor. *See Latiolais*, 93 F.3d at 207.[8]

2.   The Expense and Potential Security Risk Entailed in Transporting and Holding the Prisoner in Custody for the Duration of the Trial

The second factor sways in favor of the Bureau.  The Court has carefully read Bureau's Motion and supporting materials.

In terms of the expense, the Court has specifically reviewed Richard Holden's Declaration of the United States Marshall Service (USMS).  (ECF No. 171, Ex C, Holden Decl. at ¶¶ 6-11.)  While Holden states that there will be costs involved in transporting and holding Plaintiff, there is nothing in the declaration, *inter alia*, that points to the costs being so prohibitive to outweigh presence of Plaintiff at trial. (*Id.* at ¶¶ 10-11.)[9]

---

[7] *Latiolais*, 93 F.3d at 210-11 (Parker, J., concurring that trial may lack fundamental fairness where prisoner-plaintiff excluded from jury selection process).

[8] The Court views this factor as essential to whether there is a need for a plaintiff to be present at trial. *Hawkins v. Maynard*, 89 F.3d 850, *1 (10th Cir. 1996) (unpublished). The Court views the second factor as going to "security, logistics and docket control." (*Id.*)

[9] The Court observes that other district courts have paid for trials similar to the present one.  *See Hawks* 35 F. Supp. 2d at 465.

In terms of potential security risks, the Court is under no illusion: it is evident that Plaintiff poses *some* risk to USMS and to public safety. The Court is fully cognizant that Plaintiff is serving a 137-month sentence for bank robbery in violation of 18 U.S.C. § 2113(A), and a 24-month consecutive sentence for a supervised release violation. (ECF No. 171 at 2.) The Court has also considered the many incident reports where Plaintiff was involved. (*Id.* at 3-4.) These facts cut against issuance of the writ. But it must be remembered that this Court "regularly brings prisoners into the courtroom for criminal and civil matters." *Hawks* 35 F. Supp. 2d at 468. Moreover, the Bureau's concerns are mitigated by the Court's Orders (described below). The Orders are tailored such that any sign of ill-behavior by Plaintiff will end his participation at trial—and he will be required to confer with counsel via video conference.

In sum, this factor does not trump the credibility issues addressed above, nor the fact that civil rights actions are fundamental to our constitutional scheme. *Latiolais*, 93 F.3d at 207.

      3.    <u>The Likelihood That a Stay Pending the Plaintiff's Release Will Prejudice his Opportunity to Present his Claim.</u>

Finally, the Court finds that a stay is not appropriate for this case. Plaintiff is not projected to be released from custody until October 12, 2015. (ECF No. 171 at 2.) Because of this delay, justice would not be served by staying the trial beyond the scheduled date of January 28, 2013—nor would it promote judicial economy. Any stay would prejudice Plaintiff and slow resolution of his civil rights claim. In light of this, the Court is satisfied that Plaintiff should be "permitted to attend his trial". *See Hawks* 35 F. Supp. 2d at 468.

7

## III. CONCLUSION

Plaintiff's Motion is granted and the Court orders issuance of the *writ of habeas corpus ad testificandum.*

Based on the foregoing, the Court hereby ORDERS as follows:

1.   Plaintiff's Motion is granted and the Court orders issuance of the writ of *habeas corpus ad testificandum* (ECF No. 166);

2.   Plaintiff will attend the first day of trial scheduled for January, 28, 2013;

3.   Plaintiff will attend every successive day of the trial contingent on his behavior on the prior day.  The Court gives leave to the parties, and in addition the Bureau and the USMS, to bring to the Court's attention matters addressing Plaintiff's behavior during the course of the trial;

4.   The Court *sua sponte* permits Plaintiff to attend trial in street clothes but physically restrained in the manner deemed most appropriate by the USMS;

5.   The Court *sua sponte* directs that Plaintiff will be seated at counsel table furthest from the jury box, to reveal as little as possible his present status as a prisoner; and

6.   If the Court finds that Plaintiff's inappropriate behavior ends his participation at trial in person, Plaintiff will be afforded all telephone and video conference facilities that are outlined in Bureau's Brief in order to continue to attend his trial via video conference (ECF No. 171).

Dated this 10th day of December, 2012.

BY THE COURT:

_____

William J. Martínez
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 02-cv-01239-MSK-PAC

MARK JORDAN,

              Plaintiff,

v.

MICHAEL V. PUGH,
J. YORK,
R.E. DERR,
B. SELLERS, and
STANLEY ROWLETT,

              Defendants.

---

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

---

THIS MATTER comes before the Court on the Plaintiff's Petition for Writ of Habeas Corpus as Testificandum (**#278**), to which the Defendants responded (**#281**) and the Plaintiff replied (**#282**). Having considered the same, the Court

**FINDS** and **CONCLUDES** that:

This matter is set for a 3-day bench trial to commence on October 30, 2006. The Plaintiff now moves pursuant to 28 U.S.C. § 2241(c) for a writ of habeas corpus ad testificandum which would allow him to appear at the trial in person. The Defendants oppose his request.

A prisoner has no absolute right to attend the trial of his civil action. *See Lemmons v. Law Firm of Morris & Morris*, 39 F.3d 264, 267 (10th Cir. 1994); *see also Latiolais v. Whitley,* 93 F.3d 205, 208 (5th Cir. 1996) (prisoner has no constitutional right to attend a civil trial). However, this does not mean that a court may summarily exclude him from the trial. *See*

*Latiolais*, 93 F.3d at 208. Although it is preferable that a prisoner-plaintiff attend trial in person, and a just result may be threatened by his absence, there are countervailing considerations. *See Muhammad v. Warden, Baltimore City Jail,* 849 F.2d 107, 111-12 (4th Cir. 1988). These include: (1) the expense of facilitating his presence; (2) security concerns; (3) logistical issues; and (4) the Court's control over its docket. *Id.* (citing *Price v. Johnston,* 334 U.S. 266, 285-86(1948)).[1] Against these factors the Court considers whether the prisoner's physical presence in the courtroom will substantially further the resolution of the case, and whether the suit can be stayed until the prisoner has completed his sentence. *See Latiolais*, 93 F.3d at 208.

The Plaintiff states that if he is ordered to appear by video rather than in person, he will not be able to confer with counsel during the trial on a "real time" basis because there is no telephone in the ADX courtroom containing the videoconferencing equipment. He argues that "real time" conferencing is necessary because his newly retained counsel anticipate several surprises during the course of trial which they will not be equipped to handle without the Plaintiff's assistance. He is also concerned that he will not be allowed to use a telephone to confer with counsel during recesses and before and after trial. This concern derives from his experience during the trial in a separate action in which prison staff denied him access to a telephone, and also from his difficulties in conferring with counsel in this case.

The Defendants contend that the Plaintiff should not attend this trial in person. They

---

[1] The Supreme Court's ruling in *Price* is often quoted for the following: "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *See Price*, 334 U.S. at 285. Although *Price* did not address whether a prisoner-plaintiff could be prevented from attending his civil trial in person, appellate courts have relied on *Price* for that exact proposition. *See Muhammad* and *Latiolais*, *supra*. There is no published Tenth Circuit caselaw on this issue.

2

argue that the Plaintiff has engaged in violent behavior and has been convicted of killing another inmate with a homemade weapon.  For this reason, they aver that the Plaintiff is housed in the administrative maximum federal prison in Florence, Colorado, in its restrictive Control Unit.  The Defendants further assert that transportation of the Plaintiff would require substantial personnel and create an opportunity for the Plaintiff to escape, harm others, or smuggle contraband which can be turned into weapons.  They also state that during the trial, the Plaintiff would necessarily be housed at FCI-Englewood which is a less secure facility than where he is currently housed.

The Defendants contend that the Plaintiff can adequately participate in his own trial by videoconference, because he will be permitted to consult with his attorneys by telephone during breaks and at the beginning and end of the trial day in a room which is 15 to 20 feet away from the ADX courtroom where the videoconferencing equipment is located.  They state that a representative from the ADX Legal Office will be present throughout the trial to ensure that these conferences occur and that they are confidential.  They further proffer that if the Plaintiff were housed in FCI-Englewood during the trial, he would actually be more limited in his ability to confer with counsel because of his daily transportation to and from the courthouse.

The issues and concerns raised by the Plaintiff in his motion are not unusual.  Any time a prisoner appears at trial by videoconferencing when his counsel does not, the prisoner is deprived of the ability to consult with counsel on an immediate basis.  Instead, conferences must occur before or after the trial or during scheduled breaks.  This imposes an added burden upon the Plaintiff and his counsel to keep track of specific issues which require consultation.  It also can impact the order in which questions are presented to the various witnesses during the trial.  This problem is particularly significant in this case because his counsel are newly appointed and are law

students working with a faculty advisor who represent him pursuant to General Order 2005-3
(Order Adopting Student Practice Rule).[2]

The Court notes that the Plaintiff has recently been transported to and appeared in this
courthouse in conjunction with Criminal Action No. 04-cr-00229-LTB.  The Court appreciates
that to be physically present for trial, the Plaintiff must be accompanied by multiple United States
Marshals while being transported and in the courtroom. Security can be facilitated by used of leg
irons and a stun belt.  Using these and other appropriate means, the United States Marshal Service
can address the security issues associated with the Plaintiff's presence at trial.

For the above reasons, the Court orders that the Plaintiff shall be present at trial.[3]

**IT IS THEREFORE ORDERED** that:

(1)     The Plaintiff's Petition for Writ of Habeas Corpus as Testificandum **(#278)** is

        **GRANTED.**  The Clerk of Court shall issue a writ of habeas corpus ad

        testificandum directing the Plaintiff be brought to the courthouse on October 30,

        2006 for the trial scheduled in this action.

(2)     The United States Marshal Service is authorized to utilize a stun belt and leg irons

---

[2] The need for the Plaintiff's presence at trial might be less urgent had experienced counsel been
long involved in this case. In addition, although the Defendants provide assurances that the Plaintiff will be
allowed access to a telephone at critical moments of the trial, they have made similar assurances with
regard to the Plaintiff's pretrial conferences with counsel which have not been honored by prison staff.

[3] In footnote 3 of his Reply, the Plaintiff objects to the Court's ruling at the final pretrial
conference regarding the order of the presentation of evidence.  This objection is overruled.
Notwithstanding the shifting burden of proof, trial will proceed as directed at the final pretrial conference.
The Plaintiff will proceed with his case-in-chief, and the Defendants will then proceed with their case-in-
chief.  The Plaintiff may then present a rebuttal case. Evidence of penological purposes that justify the
regulation are limited to the purposes identified by the Defendants in the Final Pretrial Order.
Determination of any Rule 52 motions will be reserved until all evidence has been presented.

to secure the Plaintiff while he is in the courthouse.

Dated this 20th day of October, 2006

BY THE COURT:

Marcia S. Krieger
United States District Judge

5