UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No.: 1:18-cv-03025-KLM

JOHN SNORSKY,

        Plaintiff,

v.

LESLIE BEELER,
DANIEL DENT,
BRANDON HAGANS,
NAMON CHASE,
JOHN JORDAN,
MICHELLE MCVAY,
KYLE ROBERTS, et al.,

        Defendants.

### PLAINTIFF JOHN SNORSKY'S BRIEF IN SUPPORT OF PERMANENT INJUNCTION

Plaintiff John Snorsky respectfully requests the Court permanently enjoin Defendants from removing him from protective custody at the Arkansas Valley Correctional Facility, unless the conditions set forth in the attached *Exhibit A* are met.[1] This request is narrowly drawn to correct the current and ongoing violation of Mr. Snorsky's Eighth Amendment rights because only protective custody can protect Mr. Snorsky from the risk he faces, and it affords Defendants an

---

[1] This proposal was sent to counsel for Defendants on February 8, 2023, and was rejected by defense counsel during a conferral call on March 7, 2023. At that time, defense counsel stated that the Defendants wanted the discretion to remove Mr. Snorsky from protective custody for committing "any" Code of Penal Discipline offense (regardless of the severity), and did not want to have to seek court approval to do so. The parties agreed to continue negotiations leading up to the March 2023 bench trial and will keep the Court apprised of any further developments.

opportunity to remove Mr. Snorsky from protective custody for the only valid reason they have articulated: to protect staff and other inmates in protective custody.

Why does the Court need to issue a permanent injunction requiring Defendants to do their job? Because their behavior toward Mr. Snorsky over the past six years—ignoring his valid requests for protective custody, routinely removing him from protective custody, and making misrepresentations to the Court regarding the same—demonstrate they cannot be trusted to do so without a Court order requiring it. If Defendants could be trusted to do their job—and keep Mr. Snorsky in protective custody so long as the risk against him persists and he presents no risk to others—they would have agreed to the relief Mr. Snorsky seeks here. Yet they refuse.

Instead, Defendants ask this Court to refrain from interfering with their discretion. But defendants' discretion is not boundless. *Arizona v. Gant*, 556 U.S. 332, 345 (2009) (disapproving of a rule that would give officers "unbridled discretion"). It certainly does not permit them to make arbitrary, life-and-death decisions regarding the inmates in their custody. In fact, Defendants have articulated no factual or legal basis for their objection to the relief Mr. Snorsky requests here. There is none. The Court should therefore enjoin them from removing Mr. Snorsky from protective custody unless the conditions set forth in *Exhibit A* are satisfied.

## ARGUMENT

Mr. Snorsky must remain in protective custody in perpetuity due to the threat of serious bodily injury or death against him from several prison gangs. The Court should therefore dispense with the expense and delay associated with requiring Mr. Snorsky to seek extension of the preliminary injunction every 90 days, and instead put the burden on Defendants to demonstrate whether the conditions set forth in *Exhibit A* are met.

I.  **PERMANENT RELIEF IS REQUIRED TO CORRECT A CURRENT AND ONGOING VIOLATION OF MR. SNORSKY'S EIGHTH AMENDMENT RIGHT**

Defendants' violation of Mr. Snorsky's Eighth Amendment right is "current and ongoing," 18 U.S.C. § 3626(b)(3) for two reasons.

First, it is undisputed that Mr. Snorsky is, and will continue to be, at risk of serious bodily injury or death from several gangs. At least five gangs currently pose an imminent threat to his safety: (i) the 211 Crew, (ii) the Northside Mafia, (iii) the Gallant Knights Insane, (iv) the Bloods, and (v) the Hawaiian Family.

*211 Crew.* The 211 Crew seeks to harm Mr. Snorsky because of his cooperation with the prosecution of 211 Crew leader Chad Merrill for the 2015 murder of CDOC inmate Joshua Edmonds. (*See generally Ex. B*, OIG Supplemental Case Report (June 2015) at 2.) Mr. Merrill ultimately learned that Mr. Snorsky was disclosed as a witness to testify against him in the murder prosecution. (*Ex. C*, M. Gore Rpt. (Feb. 24, 2023) at 1.) In retaliation, Mr. Merrill directed the February 22, 2017 attack on Mr. Snorsky by Christopher Clark, Jaray Trujillo, and Danny Samson in which Mr. Snorsky was stabbed 43 times at CSP.

As explained in the attached and unrebutted expert report, Mr. Snorsky has been explicitly threatened by the 211 Crew—a white supremacist prison gang "known for its unparalleled violence and unprecedented reach and organization within the CDOC." (*Ex. C*, M. Gore Rpt. (Feb. 24, 2023) at 1.) Mr. Gore's report details that the 211 Crew is an exceptionally violent prison gang that was responsible for (i) the March 2013 murder of CDOC Executive Director Tom Clements, (ii) the August 2014 murder of CDOC inmate Cody Gray, (iii) the June 2015 murder of CDOC inmate Joshua Edmonds, and (iv) the July 2018 murder of CDOC inmate Matthew Massaro. (*See id.* at 6-7.) As Mr. Gore explained, "[i]f you stand in the way of the 211 Crew or do anything to

3

upset the gang, this is what will happen to you." (*Id.*) Most recently, an inmate in Mr. Snorsky's day hall at CSP (Jason Payne) informed him that a high-ranking 211 Crew member ordered Mr. Payne to stab Mr. Snorsky because Mr. Snorsky is a "rat" and a "snitch." (ECF 160 at 87:7-89:5.) It is Mr. Gore's opinion that "the threat by the 211 Crew against Mr. Snorsky will endure in perpetuity," because, "once the 211 Crew has identified an individual on their 'hit list,' that individual will remain a target until the hit is complete." (*Ex. C*, M. Gore Rpt. at 10.)

*Northside Mafia.* The Northside Mafia seeks to harm Mr. Snorsky because he was disclosed as a witness against Northside Mafia member Christopher Clark for his role in the attempted murder of Mr. Snorsky in February 2017. (*See generally* ECF 146-1 at 4 (listing Mr. Snorsky as a witness against Mr. Clark).) Lt. Johnson testified at the April 2022 preliminary injunction hearing that the Northside Mafia's most recent "retaliation list" obtained by CSP intelligence officers had Mr. Snorsky's full name and DOC ID number listed next to the word "rat" in parentheses with an asterisk or star next to it. (ECF 160 at 136:10-22.)

*Gallant Knights Insane ("GKI").* The GKI gang seeks to harm Mr. Snorsky because he was disclosed as a witness against GKI member Jaray Trujillo for his role in the attempted murder of Mr. Snorsky in February 2017. (*See generally* ECF 146-2 at 5 (listing Mr. Snorsky as a witness against Mr. Trujillo).) Mr. Snorsky testified that, shortly after he arrived at CSP in 2021, a GKI member named "Isaiah" approached Mr. Snorsky and said, "What's up homie? How are you?," "Your name is Snorsky, right?" "Yeah my homie [Trujillo] is one of the dudes that almost killed you, bro." (ECF 160 at 116:12-25.) Isaiah then recited explicitly how Mr. Snorsky was stabbed in February 2017, and made fun of the fact that Mr. Snorsky asked his attackers why he was being

4

stabbed. (*Id.* at 117:1-4.) Mr. Snorsky testified that this was Isaiah's way of letting him know that Isaiah knows he is a snitch and that is the reason why he was stabbed. (*Id.*)[2]

***Bloods.*** Mr. Snorsky is in risk of imminent harm from Blood or "CMG Blood" gang. (*See generally Ex. C*, M. Gore Rpt. at 13-14.) The Bloods are very active in Colorado, with one notorious gang member sentenced to 30 years in federal prison for multiple murders in 2019. (*See id.*) Armando Diaz, who physically attacked Mr. Snorsky on February 10, 2021 (screaming "Bloods" and calling Mr. Snorsky a "bitch") while he was in protective custody at BVCF is affiliated with the Bloods gang. (ECF 160 at 80:23-81:25.) Mr. Snorsky testified at the April 2022 preliminary injunction hearing that Mr. Diaz continued to threaten him after Mr. Snorsky was placed in the day hall next to Mr. Diaz's at CSP—including "calling [Mr. Snorsky] a bitch and a rat," and saying that when he assaulted Mr. Snorsky, he "just laid there like a bitch and . . . didn't fight back." (*Id.* at 85:14-20.) Mr. Gore has therefore opined that, "Mr. Snorsky also faces an imminent risk of bodily harm or death from members of the Bloods gang." (*Ex. C*, M. Gore Rpt. at 13-14.)

Second, Defendants have not, and will not, protect Mr. Snorsky from the threat against him. Defendants' actions—consistently refusing to transfer Mr. Snorsky to protective custody and removing him from protective custody without cause—evince an ongoing failure to "do their job," *Tay v. Dennison*, 457 F. Supp. 3d 657, 688 (S.D. Ill. 2020), and continue housing Mr. Snorsky in protective custody. These failures have directly led to several serious threats and attacks on Mr. Snorsky. Examples abound:

---

[2] Mr. Snorsky was also disclosed as a witness against Hawaiian Family member Danny Samson for attempting to murder Mr. Snorsky in February 2017, and is therefore also in danger from members of that gang. (*See generally Ex. C*, M. Gore Rpt. at 12.)

- **January 12, 2016:** Mr. Snorsky is assaulted in his day hall by fellow inmate Lonnie Herrera, who threw feces and urine on him because he was a "rat," beat him with a pillowcase filled with weights, and stabbed him through the jaw. (*Ex. C*, M. Gore Rept. at 8.)

- **January 29, 2016:** Mr. Snorsky writes a letter requesting protective custody, stating that he "had been transferred to 3 prisons in 3 months due to the custody issues with the . . . 211s who have attack[ed]/jumped me, stabbed me, threatened me, and tried to extort me. . . . My pleas for help fall upon deaf ears." (*Id.*)

- **August 12, 2016:** His request for protective custody request was ultimately denied in August 2016—purportedly because the Protective Custody Review Committee could not "verify that there is any documentation that he is a 'head witness' in the" murder prosecution of Mr. Merrill." (*Ex. D*, Notice of Protective Custody Decision (Aug. 12, 2016).)

- **September 2016-February 2017:** Mr. Snorsky is attacked multiple times by a Northside Mafia member—who "knocked [Mr. Snorsky] out and beat [him] up pretty good." (*Ex. E*, Intelligence Assessment (Feb. 24, 2017) at 2.)

- **August 30, 2016:** Mr. Snorsky informs corrections officers that a "hit" had been ordered on him and he was temporarily placed on lockdown. (*Ex. C*, M. Gore Rept. at 9.)

- **October 17, 2016:** Mr. Snorsky informs corrections officers about his concerns about the 211 Crew and that he "does not feel safe." (*Id.*)

- **February 16, 2017:** Mr. Snorsky meets with CSP's intelligence unit, and Lt. Brandon Hagans informs him that he "need[s] to change his behavior in order to progress and be considered for PC placement in the future." (*Ex. E*, Intelligence Assessment (Feb. 24, 2017) at 2.) Mr. Snorsky was subsequently returned to general population at CSP.

- **February 22, 2017:** Mr. Snorsky is stabbed approximately 40 times by Mr. Samson, Mr. Trujillo, and Mr. Clark. He is ultimately transferred to protective custody more than a month later. (*Ex. C*, M. Gore Rept. at 9.)

- **February 2021:** Mr. Snorsky is attacked in Buena Vista Protective Custody by Bloods gang member Armando Diaz. (*See id.*)

Defendants have offered no evidence "that the threat to Plaintiff from the various offenders referenced in [the April 2022] Order has dissipated such that PC would no longer be necessary."

6

(ECF 161 at 46.) Among other things, Defendants have presented no evidence or testimony to undermine the Court's finding in April 2022 that the threat to Mr. Snorsky continues due to him being placed on multiple gangs' hit lists. (*Id.* 27.)

Defendants' refusal to cooperate with the relief requested here further demonstrates why they will continue to violate Mr. Snorsky's Eighth Amendment right if a permanent injunction is not entered. Despite acknowledging the persistent threat against Mr. Snorsky, Defendants refuse to commit to keeping him in protective custody without a court order. What's worse, Defendants have not articulated a valid reason to put him back in general population—rather, they insist on the discretion to remove him from protective custody in the event he violates some unspecified rule. In other words, Defendants wish to retain the discretion to punish Mr. Snorsky by returning him to general population—a nearly guaranteed death sentence.

But Defendants do not have discretion to punish Mr. Snorsky for some future behavioral infraction by violating his Eighth Amendment right. Defendants' actions—repeatedly returning Mr. Snorsky to general population for no reason, failing to follow their own rules and regulations, making misrepresentations to the Court, and refusing to cooperate with Mr. Snorsky's current request for permanent placement in protective custody—make it clear: Defendants will remove Mr. Snorsky from protective custody if given any "discretion" to do so. For these reasons, Defendants' violation of Mr. Snorsky's Eighth Amendment right is "current and ongoing," entitling him to permanent injunctive relief.

## II. THE PROPOSED INJUNCTION IS NARROWLY TAILORED SO THAT CDOC'S PENOLOGICAL INTERESTS ARE ACCOMPLISHED

Second, the proposed injunction is narrowly tailed to accomplish CDOC's legitimate, penological interests regarding safety, discipline, and housing placement. Mr. Gore has opined that

the alternatives Defendants have proposed will not adequately protect Mr. Snorsky. (*See Ex. C*, M. Gore Rpt. at 15-16 (explaining why entering "custody issues" or transferring Mr. Snorsky to a general population unit in out-of-state custody will not protect him from violence from the 211 Crew and other prison gangs).) Defendants have, likewise, failed to present any evidence that Mr. Snorsky has posed a danger to other inmates or staff since being placed in protective custody at the Arkansas Valley Correctional Facility last May. Nor have they offered any explanation why the terms proposed in *Exhibit A* are insufficient to protect other inmates or staff in the event that Mr. Snorsky poses a danger to them, or explained why protective custody doesn't have sufficient safeguards to protect Mr. Snorsky from other inmates. In short, Defendants have presented "no evidence that an order [to keep Mr. Snorsky in PC] would interfere in a negative fashion with the administration of CDOC or negatively impact prison safety or the management of CDOC facilities." (ECF 161 at 46.) Absent such evidence, the persistent and overwhelming threats to Mr. Snorsky's safety from myriad prison gangs justifies him being kept in protective custody subject to the terms set forth in *Exhibit A*.

### III. REQUIRING COURT APPROVAL BEFORE MR. SNORSKY MAY BE REMOVED FROM PROTECTIVE CUSTODY IS JUSTIFIED IN LIGHT OF THE DEFENDANTS' HISTORY OF MISCONDUCT

Second, a requirement that Defendants seek court approval before removing Mr. Snorsky from protective custody is necessary given Defendants' history of misconduct. The Court noted in its May 12, 2022 Order granting Mr. Snorsky's request for preliminary injunction that "there is evidence that Defendants disregarded the risk [to Mr. Snorsky] by not only failing to take measures to abate it, but [by] actively thwart[ing] Plaintiff's efforts to ensure his safety." (ECF 161 at 48-49.) For instance, Mr. Snorsky presented evidence at the hearing (which was subsequently

confirmed in discovery) that his request for a custody issue with Armando Diaz and his grievances regarding the same were not processed, and that Lt. Johnson (then-head of CSP Intelligence) failed to follow up on this when he was informed of the issue. (*See id.* at 49.)

Several other instances of misconduct have also been revealed:

- Mr. Snorsky's public defender wrote a letter to CDOC raising several concerns about his safety at CSP, which appears to have never been investigated or documented in an incident report. (*See Ex.* F, Ltr. from D. Bull to CDOC (June 5, 2015).)

- CDOC OIG discussed protective custody with Mr. Snorsky in his June 2015 interview regarding the murder of Joshua Edmonds, but coincidentally only failed to record the portion of the interview in which protective custody was discussed. (*Ex. B*, OIG Supplemental Case Report at 4.) Despite cooperating fully with the investigation, Mr. Snorsky did not receive protective custody.

- Mr. Snorsky's January 2016 request for protective custody was not denied until August 2016 (*i.e.*, nearly seven months later)—with the purported reason for that denial being that the Protective Custody Review Committee could not "verify that there is any documentation that he is a 'head witness' in the" murder prosecution of Mr. Merrill." (*Ex. D*, Notice of Protective Custody Decision (Aug. 12, 2016).) This explanation was directly contrary to the intelligence assessment prepared for that protective custody decision, which found it was "probable" that Mr. Snorsky "is a witness in murder trial and gave statement to authorities." (*Ex. G*, Intel Assessment (July 25, 2016) at 2.)

- Mr. Snorsky never received a Protective Custody Review Committee meeting in February 2017 and was instead told by Lt. Hagans (then-head of CSP Intelligence) that he "need[ed] to change his behavior in order to progress and be considered for PC placement in the future"—when no such requirement existed. (*Ex. E*, Intelligence Assessment (Feb. 24, 2017) at 2.)

- Mr. Snorsky was removed from protective custody in July 2021 for a low-level Class II(B) offense, while Mr. Diaz (who assaulted Mr. Snorsky in February 2021 and thereby committed a serious Class I offense), was permitted to remain in protective custody. (ECF 161 at 5.)

- Both Mr. Snorsky and Mr. Payne wrote to Lt. Johnson at CSP about an order Mr. Payne received from 211 Crew members to kill Mr. Snorsky, and the fact that Mr. Payne was in jeopardy for not carrying it out. (ECF 161 at 37.) But Lt. Johnson either did not get the messages or refused to respond. (*See id.*)

9

- Mr. Snorsky was handed a protective custody request form at CSP in October 2021 in his cell (in violation of policy) which incorrectly advised Mr. Snorsky that his request for protective custody would not be processed until he completed certain programming (when no such requirement exists). (*Ex. H*, PC Request Form (Oct. 2021).)

In short, there is even more evidence now than in April 2022 of Defendants' "malfeasance," a "lack of responsiveness," and "outright misrepresentations" when it comes to Mr. Snorsky's safety. (ECF 161 at 25.) This evidence—and Defendants' refusal to agree to the proposed terms outlined in *Exhibit A*—makes clear that Defendants wish have unfettered discretion to remove Mr. Snorsky from protective custody at any time for any reason, regardless of the obvious risk to his safety. The Court should not reward Defendants' continued malfeasance and blatant disregard of Mr. Snorsky's Eighth Amendment rights and must instead require the Defendants to seek Court approval for such a move, subject to the terms outlined in *Exhibit A*.

## **CONCLUSION**

Defendants have not, and will not, honor Mr. Snorsky's Eighth Amendment right to be free from cruel and unusual punishment by continuing to house him in protective custody. Thus, prospective relief remains necessary to correct this current and ongoing violation. As Defendants have offered no alternative that provides any real protection to Mr. Snorsky, the relief requested in *Exhibit A* is narrowly drawn and extends no further than necessary. It is the least intrusive means to correct the ongoing violation, and Defendants have offered no credible argument or evidence to the contrary.

Dated:  March 7, 2023.    Respectfully submitted,

*s/Kevin D. Homiak*
Kevin D. Homiak
Homiak Law LLC
1001 Bannock Street #238
Denver, CO 80204
Telephone: 505.385.2614
Email: kevin@homiaklaw.com

and

Brian S. Osterman
Matthew V. Rotbart
Kristen L. Ferries
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone:   303.244.1800
Facsimile:    303.244.1879
Email:   osterman@wtotrial.com
             rotbart@wtotrial.com
             ferries@wtotrial.com

and

Erica T. Grossman
Holland, Holland, Edwards & Grossman, PC
1437 High Street
Denver, CO 80218
Telephone: 303.860-1331
Email:    erica@hheglaw.com

*Attorneys for Plaintiff, John Snorsky*

**CERTIFICATE OF SERVICE (CM/ECF)**

      I HEREBY CERTIFY that on March 7, 2023, I electronically filed the foregoing **PLAINTIFF JOHN SNORSKY'S BRIEF IN SUPPORT OF PERMANENT INJUNCTION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Nathan Andrew Klotz**
  nklotz@dietzedavis.com, ckennedy@dietzedavis.com

- **William A. Rogers , III**
  wrogers@dietzedavis.com, ckennedy@dietzedavis.com


                                        *s/ Kevin D. Homiak*