# Exhibit E



**COLORADO**
Department of Corrections

AR Form 1150-02RD B (10/1/14)

The information contained in this document is considered:

**LAW ENFORCEMENT SENSITIVE**

## INTELLIGENCE ASSESSMENT    DATE: 20170224

**Subject:**  Interview of John SNORSKY #123847 Regarding Protective Custody

**Summary:**  The UNIT responded to and conducted an interview on Offender SNORSKY, John #123847 per a request made by the CSP appointing authority. The information received from the interview identified his perceived issues and reasons for the threats. Expectations were given outlining his behavioral changes and personal actions necessary to pursue the protective custody (PC) process. His issues were validated and many of his incidents and claims were verified. The issue to not accept SNORSKY into PC was not due to the validity of threats, but due to the behaviors and personal actions that would be detrimental to the mission of the PC Units. SNORSKY committed to work with CSP facility intelligence staff to build a foundation and discuss when he had problems and to request an audience before he started to display negative behaviors.

**Threat Level:** (place X in appropriate box below)

[ ] No Threat    [ ] Low    [X] Medium    [ ] High / Impending Threat

**Supporting Information:**

SNORSKY entered the CDOC in 2004 on an Arapahoe Burglary Case (04CR165 7) and left for community corrections in 2005. He was arrested in Florida and returned to DOC custody in 2007 with new escape charges. SNORSKY then made parole in November of 2011. He remained on parole until October 2013, when he was arrested for attempted theft out of Arapahoe (13CR2437) and his current charges are from Adams (13CR3158). He returned to DOC March 2014 on a parole return and went to court several times before agreeing to a 30-year deal with the Adams County DA on the Burglary and Kidnapping Charges. During this recent incarceration, he has had multiple write-ups for weapons with one criminal contraband charge, Fremont (15CR64) and one pending criminal case (17CR59).



SNORSKY claims that when he was sentenced for his current crime (involving an attempted burglary of an Aurora home, where he grabbed an 8-year old from her room while she was sleeping and claims he let her go when he got to the alley) the media coverage was immediately portraying him has a child predator. Judge Thomas Ensor said in his sentencing, "You have a very dark side. You are the boogie man. You are the bump in the night." Due to this media attention, he put in for PC on 3/27/2015, but was denied by the committee. He admits to always having a weapon due to fear for his own life. He continued to act out and was found to be in possession of a 26" sharpened weapon and 10' of home-made rope on 3/31/2016.

On 2/16/2017 at approximately 14:00, Capt. Roseanna Jordan and Brandon Davis from the OIG Unified Intelligence Team (UNIT), along with CSP Intell Officer Lt. Brandon Hagans, interviewed offender SNORSKY #123847 at CSP. SNORSKY mentioned right off that he had a "high profile media

case" and that he was "tripping on acid" when he panicked and grabbed the girl. SNORSKY admits that drugs were the source of many of his problems and that for all practical purposes he had "been in since I (SNORSKY) was 17." SNORSKY claims "the Mexicans are against me 'cause my victim (kidnapping) was Mexican." He also said he has issues with the "White dudes" either because they think his case is sexual or that a rumor that he killed a kid.

SNORSKY stated that the Sureños tried to extort him continually and a "North Side Dude" let him live in his cell. SNORSKY reported that was 'T' and that 'T' had his back (145483 - HARRISON, THOMAS - TCP - Moniker: Lil T). On 6/27/2014, he engaged in a fight in which he and his cell mate came to the aid of a North Side offender who was getting assaulted. The victim was 132514 - MONTOYA, ANGELO (NSM – Moniker: Cheese) and he was being assaulted by 3 Sureño and 1 MS-13 offenders. Offender was sent to KCCC in 07/30/2014 and was approached by white offenders who threatened him if he did not leave the yard. He reported the incident and was moved from the facility. After he left KCCC he was convicted of 4 more dangerous contraband cases and 3 sexual harassment cases.

He claims his current problems at CSP are over a North Side guy who "ran into his cell 3-4 times recently" (since about September) and knocked him out and "beat me up pretty good." These incidents have not yet been verified. He also mentioned that he was feces/urine bombed at CSP and that "Lonnie" (61812 - HERRERA, LONNIE R. – DG Weapons) tried to beat and stab him last January. This was confirmed via incident report.

He also has problems believed to still be over MERRILL saying SNORSKY had snitched. When asked where he would feel safe, he responded he would feel "relatively safe in the pod" he was last in. SNORSKY reported he would be okay there as he gets along with those on his tier. He said as long as there is no 211 or White Supremacist it would be okay. He had concerns that since he was removed from population it "looks really suspicious" and everyone will think he was checking in. He then randomly offered again that he had the choice he would go back into E-5-11.

At this point, expectations of what he would need to do to progress through the process and then another possible attempt to get into PC were explained. SNORSKY was very resistant to changing his behavior. He believes the situation is hopeless. Offender's mood changed dramatically throughout the interview from calm to angry to sad (tearing up) and to anxious.

Offender was again reminded of the need to change his behavior in order to progress and be considered for PC placement in the future. He then said we would need to keep him away from 211 and SUR for him to be successful. Was finally reminded that he would need to progress through programming and maintain his behavior. Closed by asking him if he felt he could return to his last pod and what would he say if challenged about his sudden movement out of his unit? He stated he would say it had to do with the fact that staff thought his current rashes (a medication side effect he reported) were bruises and that staff removed him for evaluation. When staff determined it was not due to fights, they allowed him to come back. SNORSKY committed to work with Lt. Hagans to build a foundation and discuss when he had problems and to request an audience before he started to display disruptive behavior.

Interview was ended at this point and CSP Associate Warden was immediately briefed on the results of the interview.

**Information Evaluation**

| 1- Cannot be judged | 2 - Doubtful | X | 3 - Probable | 4 - Confirmed |
|---|---|---|---|---|
| | | X | 3 - Probable | |

**Criminal Activity/Threat:**
SNORSKY has a history of weapons making. His disruptive behaviors and fear of Sur and 211 / White STGs has led him to continually have a weapon in his possession. He understands this has hurt his chances at PC, but has acknowledged that he is not going to let himself get "raped or murdered." Due to his ability to find weapon making materials and successfully manufacture them, staff should utilize necessary precaution when searching or interacting with this offender.

**Intelligence Gaps:**
Some of the incidents reported by SNORSKY still need to be verified. Additional information needs to be reviewed, but due to a recent assault on SNORSKY, that process is on hold until the criminal investigation is completed.

**Sources:**
  Offender
  DCIS
  iDOC

**Source Evaluation**

|   | 1- Unknown |   | 2 - Unreliable | X | 3 - Reliable |   | 4 - Very Reliable |
|---|---|---|---|---|---|---|---|

**Brandon Davis, UNIT and Capt. Roseanna Jordan**

Distribution: (place X in appropriate box or boxes below)

| X | UNIT | X | IG Investigator | X | iDOC | X | Warden |   | Parole Manager |
|---|---|---|---|---|---|---|---|---|---|