IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-03025-KLM

JOHN STANDLEY SNORSKY,

    Plaintiff,

v.

LESLIE BEELER, et al.,

    Defendants.

## DEFENDANTS' RESPONSE TO DOC. 209

Defendants, through their counsel, Dietze and Davis, P.C., respond to this Court's Order to brief placement options for Plaintiff [Doc. 209] as follows:

## BACKGROUND

On February 15, 2023 this Court ordered the parties submit briefs relating to the relief sought by Plaintiff and the options available to Defendant for Plaintiff's placement within the Colorado Department of Corrections, in advance of the March 29, 2023 hearing on Plaintiff's Request for Permanent Injunction. In particular, Defendants were ordered to explain "what alternatives to permanent placement in protective custody, if any, may apply to maintain the safety of Plaintiff, including, for example, the possibility of his transfer to a particular facility that reduces the threat or increases the ability of CDOC to keep him safe without special designations."

Defendants were also ordered to "cite any case authority that supports their position regarding the propriety of the issuance of permanent injunctive relief and/or other alternatives to keep an at-risk inmate such as Mr. Snorsky safe." Defendants respond to each request in turn.

## **RESPONSE**

### A. Alternatives to permanent placement in Protective Custody

At the outset, Defendants believe it is important to make clear that the Department of Corrections does not oppose Mr. Snorsky's placement in Protective Custody at this time. He has been approved for Protective Custody in the past and has complied with PC requirements while housed at Arkansas Valley Correctional Facility's PC unit since his transfer there last year.

Defendants also note that Protective Custody may be a long-term housing solution for Plaintiff, so long as he remains program compliant. Issues remain about conditions under which Mr. Snorksy could remain in PC if safety, logistical, or disciplinary issues arise, but the parties are actively working to see if they can arrive at a suitable agreement that balances Mr. Snorsky's safety concerns and the Department's need to appropriately manage its facilities.

However, alternatives to placement in Protective Custody for an inmate like Mr. Snorsky—who claims safety concerns about not just individuals within the DOC, but larger groups and gangs—would include a transfer to an out of state facility or the addition of verifiable Custody Issues to his file.

The out of state placement option is considered when a large number of individuals, or members of a larger group, pose a potential threat to an inmate. This allows the Department to move inmates away from facilities with a higher concentration of specific gangs to facilities that are less populated with members of those gangs. The receiving state is briefed on the inmate so it is appraised of his various concerns and issues.

Another option is undertaking a review, verification, and potential update of Mr. Snorsky's Custody Issues—which would prevent him from being housed in a unit with inmates on his

Custody Issue list. This process was discussed with this Court at the preliminary injunction hearing, and remains a way for Mr. Snorsky to identify potential threats so they can be accounted for in his placement within DOC.

Finally, to the extent it is responsive, the Department notes that if Mr. Snorsky remained compliant in PC it could look at *progressing* him out of PC and into a lower custody facility. These facilities require inmates to maintain appropriate behavior and disengagement from gang activity. Thus, this presents another long-term housing option that would promote Mr. Snorsky's safety and present fewer restrictions than in a PC unit.

Again, the Department is working to find an agreeable solution to allow Mr. Snorsky to stay in Protective Custody long-term, but these are alternatives to such placement that can be addressed in more detail at the March 29, 2023 hearing.

### B. Authority in support of Defendant's position regarding permanent injunctive relief

While Defendants do not oppose Mr. Snorsky's placement in PC at this time, making any such placement "permanent"—without any sort of conditions or qualifiers—creates not only separation of powers issues but simple logistical ones as well.

The CDOC has broad discretion over the management of prisons, *Reeves v. Colo. Dep't of Corr.,* 155 P.3d 648, 651 (Colo. App. 2007), and transfer and placement decisions are purely administrative in nature and are "left to the broad discretion of prison administrators." *People v. Watson,* 892 P.2d 388, 390 (Colo. App. 1994) (quoting *White v. People,* 866 P.2d 1371, 1373 (Colo. 1994)).

Generally, the authority to transfer a prisoner lies with the Department of Corrections, not with the courts. Colo.Rev.Stat. §§ 16-11-308(5); 17-1-105(1)(a).  Courts are not to intervene in internal prison decisions made by staff.  *See Olim v. Wakinekona,* 461 U.S. 238 (1983).

Furthermore, inmates do not have any constitutional or state created entitlement to be confined in a particular facility.  *See Olim,* 461 U.S. at 248 (the transfer of an inmate to another prison "does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself."); *see also* Colo. Rev. Stat. § 17-1-105(1)(a) (again, "the executive director shall have and exercise: (a) All the right and power to transfer an inmate between correctional facilities.").

Finally, as Defendants have stated in prior pleadings, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control, and maintenance by the sovereign states of their penal systems.  It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations." *Battle v. Anderson*, 564 F.2d at 392 (10th Cir. 1997).

Making Mr. Snorsky's placement in Protective Custody permanent would improperly interfere with the Department's operations and implicate separation of powers issues.  But, it could also create purely logistical headaches that would undermine efforts to properly and safely house both Mr. Snorsky and other inmates.  Such issues can be addressed at the March 29, 2023 hearing.  But overall, the Department should retain its express authority to manage its inmate population.

4

Respectfully submitted this 7th day of March, 2023.

                                      Dietze and Davis, P.C.

                                      *s/ Nathan A. Klotz*
                                      WILLIAM A. ROGERS, III
                                      NATHAN A. KLOTZ
                                      2060 Broadway, Suite 400
                                      Boulder, CO 80302
                                      Telephone: 303-447-1375
                                      FAX: 720-508-0632
                                      E-Mail: wrogers@dietzedavis.com
                                                    nklotz@dietzedavis.com
                                      *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

This is to certify that I have duly served the within **DEFENDANTS' RESPONSE TO DOC. 209** upon all parties of record by filing via CM/ECF this 7th day of March, 2023.

*s/ Cecil A. Kennedy*